# EXHIBIT B

**(State court pleadings, process, and orders served on the Removing Defendants)**

# RON AUSTIN & ASSOCIATES, L.L.C.

### ATTORNEYS AT LAW

Ron A. Austin
Jeffrey P. Green
Catherine Hilton
Jevan Fleming
John Stephens

of counsel
Ramona G. Fernandez

September 20, 2018

**VIA CERTIFIED MAIL: 7018 0680 0001 4136 1907**
Samuel W. Whitt
4141 Parklake Dr., Ste. 200
Raleigh, NC 27609

     Re:   *Francis, Lloyd, et al vs. Make It Right-New Orleans, LLC et al*
           CDC Orleans Parish
           No. 2018-08977 "Div. B 05"

Dear Mr. Whitt,

    Please find enclosed a certified copy of the Petition for Damages and citation filed in connection with the above referenced matter, via Certified Mail, return receipt requested. The Petition is being served upon you via the Louisiana Long Arm Statute.

    Please answer within the legal delays allowed by law.

    With kind regards, I remain

                Very truly yours,

                RON AUSTIN & ASSOCIATES, L.L.C.

                Catherine Hilton

CH/jt
Enclosure

400 MANHATTAN BOULEVARD  HARVEY, LOUISIANA 70058
TELEPHONE: 504.227.8100     FACSIMILE: 504.227.8122     www.austin.associates.net

ATTORNEY'S NAME:   Austin, Ron A 23630
AND ADDRESS:   920 4th Street , Gretna, LA 70053

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2018-08977          DIVISION: B          SECTION: 05

FRANCIS, LLOYD  ET AL

Versus

MAKE IT RIGHT-NEW ORELANS, LLC ET AL

CITATION - LONG ARM

TO:          SAMUEL W. WHITT

THROUGH:   THE LOUISIANA LONG ARM STATUTE

4141 PARKLAKE DRIVE, SUITE 200, RALEIGH, NC 27609

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)
days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through
the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA September 18, 2018

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Damian Clark, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| Class Action PETITON FOR DAMAGES | Class Action PETITON FOR DAMAGES |
| ON  SAMUEL W. WHITT | ON  SAMUEL W. WHITT |
| THROUGH:  THE LOUISIANA LONG ARM STATUTE | THROUGH:  THE LOUISIANA LONG ARM STATUTE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said SAMUEL W. WHITT being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / | _____ No. _____ |
| PAPER          RETURN | Deputy Sheriff of _____ |
| _____/          _____/ | |
| SERIAL NO.     DEPUTY     PARISH | |

ID: 10017154                    Page 1 of 1

ATTORNEY'S NAME:   Austin, Ron A 23630
AND ADDRESS:       920 4th Street , Gretna, LA 70053

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

| NO: 2018-08977 | DIVISION: B | SECTION: 05 |
|---|---|---|

### FRANCIS, LLOYD  ET AL

Versus

### MAKE IT RIGHT-NEW ORELANS, LLC ET AL

### CITATION – LONG ARM

TO:        SAMUEL W. WHITT

THROUGH:   THE LOUISIANA LONG ARM STATUTE

           4141 PARKLAKE DRIVE, SUITE 200, RALEIGH, NC 27609

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA September 18, 2018**

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Damian Clark, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Class Action PETITON FOR DAMAGES** | **Class Action PETITON FOR DAMAGES** |
| ON SAMUEL W. WHITT | ON SAMUEL W. WHITT |
| THROUGH:  THE LOUISIANA LONG ARM STATUTE | THROUGH:  THE LOUISIANA LONG ARM STATUTE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Deputy Sheriff of _____ | HIM/HER the said SAMUEL W. WHITT being absent from the domicile at time |
| Mileage: $ _____ | of said service. |
| _____ / ENTERED /_____ | Returned the same day |
| PAPER                RETURN | _____ No. _____ |
| _____ /_____ /_____ | Deputy Sheriff of _____ |
| SERIAL NO.       DEPUTY        PARISH | |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.

DIVISION " "

LLOYD FRANCIS and JENNIFER DECUIR
On behalf of themselves and on behalf of all others similarly situated

VERSUS

MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION
MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III,
JAMES MAZZUTO, SAMUEL W. WHITT,
S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, BRAD PITT,
MAURICE COLEMAN, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE
AND JOHN DOES 1-50

FILED: _____     _____
                                         DEPUTY CLERK

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come **petitioners, Lloyd Francis,**
**and Jennifer Decuir,** individually and on behalf of all others similarly situated, who respectfully
represent:

I.

**Lloyd Francis and Jennifer Decuir** are persons of the full age of majority, and residents
of the Parish of Orleans, and are representative of the plaintiff class in this action, who aver:

A.     Plaintiffs and Class Members are individuals who have suffered economic losses,

        property losses, and non-economic losses or injuries as a result of Defendants

        actions and omissions, all as more fully set forth hereinafter, within six basic

        categories: Physical Personal Injury Tort Claims; Nonphysical Tort Claims;

        Property Related Claims; Financial Claims; Mental Distress Claims; and Statutory

        Claims.

B.     Plaintiffs and Class Members are individuals who purchased Make It Right

        Homes from **MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT**

        **RIGHT FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS**

        **HOUSING, LLC.** based upon representations and promises of representatives of

        **MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT RIGHT**

        **FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS HOUSING,**

        **LLC.** that they were purchasing quality built, green, sustainable homes designed

to withstand hurricane force winds.

2.

Made defendants herein are the following:

A.     **MAKE IT RIGHT FOUNDATION,** a foreign not for profit foundation and/or co-op, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

B.     **MAKE IT RIGHT-NEW ORLEANS, LLC,** a foreign not for profit limited liability company, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

C.     **MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** a foreign not for profit limited liability company, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation

designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

**Throughout this action, the Foundation and its subsidiaries are collectively referred to hereinafter as "the Foundation".**

D.       **THOMAS F. DARDEN, III,** on information and belief, a person of the full age of majority and a resident of the State of North Carolina, who at all times relevant hereto, was an Officer and/or Chief Executive Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (collectively, the Foundation) from 2007 through 2014. During the relevant time period, defendant Darden held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Darden also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do. At all times relevant hereto, Defendant Darden made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages.

E.       **JAMES MAZZUTO,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in the Parish of Orleans, State of Louisiana, who is Treasurer and/or Chief Operating Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation) from 2014 through the present, who assumed

3

the management responsibilities of former board member and CEO, Thomas Darden.  During the relevant time period, defendant Mazzuto held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Mazzutto also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.   At all times relevant hereto, defendant, Mazzuto made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages.  At present, Defendant Mazzuto is engaged in an attempt to defraud the residents of the Make It Right community by again promising to repair their property but before providing repairs, requiring the homeowners to sign a "package" without disclosing to the residents that the "package" contains a non-disclosure agreement and a binding arbitration agreement.

F.    **SAMUEL W. WHITT**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Raleigh, North Carolina, who is a former Chairperson of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he held from 2007 through 2014.  During the relevant time period, defendant Whitt held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Whitt also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.  On

4

information and belief, defendant, Whitt, is a licensed attorney at a current member of the North Carolina State Bar.

G.   **S.H. "JIM" FOGLEMAN**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Raleigh, North Carolina, who is a former Treasurer/Secretary of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he held from 2007 through 2014.  During the relevant time period, defendant Fogleman held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Fogleman also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.  On information and belief, defendant, Fogleman, is a Certified Public Accountant.

H.   **LATOYA KING**, a person of the full age of majority and a resident of Raleigh, North Carolina, who is a former Vice President of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position she held from 2007 through 2014.  During the relevant time period, defendant King held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant King also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which she failed to do.

5

I.      **VERONICA TAYLOR**, a person of the full age of majority who, upon

information and belief, who is a former Chief Operating Officer of **MAKE IT**

**RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS,**

**LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING**

**LLC**, (the Foundation), a position she held from 2007 through 2010.  During the

relevant time period, defendant Taylor held a position of authority and control

over the management of the Foundation, its funds, assets, and operations by

serving as an officer and/or a member of the board, and has owed, and continues

to owe fiduciary duties of care and loyalty to the foundation and to its charitable

beneficiaries.  Defendant Taylor also had a duty to act in good faith, and in the

best interest of the Foundation, including making reasonable inquiries when other

officers, directors, and/or employees made misrepresentations, or failed to act in

good faith, which she failed to do.

J.      **MAURICE COLEMAN**, a person of the full age of majority who, upon

information and belief, is a resident of and domiciled in Zachary, Louisiana, who

is a former member of the Board of Directors of **MAKE IT RIGHT**

**FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC,**

**AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,**

(the Foundation), a position he held from 2007 through 2014.  During the relevant

time period, defendant Coleman held a position of authority and control over the

management of the Foundation, its funds, assets, and operations by serving as a

member of the board, and has owed, and continues to owe fiduciary duties of care

and loyalty to the foundation and to its charitable beneficiaries.  Defendant

Coleman also had a duty to act in good faith, and in the best interest of the

Foundation, including making reasonable inquiries when other officers, directors,

and/or employees made misrepresentations, or failed to act in good faith, which

he failed to do.

K.      **BRAD PITT**, a person of the full age of majority who, upon information and

belief, is a resident of and domiciled in Beverly Hills, California who is a

member of the Board of Directors of **MAKE IT RIGHT FOUNDATION**

AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, (the Foundation), a position he held since 2007. During the relevant time period, defendant Pitt held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Pitt also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

L.     JOHN SADER, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in New Orleans, Louisiana who is a former member of the Board of Directors and Director of Construction of MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, (the Foundation), a position he held in 2010 when the majority of the Make It Right homes were being constructed in New Orleans. In addition to being a Member of the Board of Directors, as the Director of Construction defendant Sader oversaw the construction of the Make It Right homes in New Orleans. During the relevant time period, defendant Sader held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Sader also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

M.     CRAIG TURNER, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in New Orleans, Louisiana who is a former member of the Board of Directors of MAKE IT RIGHT

FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC,

AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,

(the Foundation), a position he held from 2011 through 2014, when the majority

of the Make It Right homes were being constructed in New Orleans.  In addition

to being a Member of the Board of Directors, defendant Turner was the Director

of Construction and oversaw the construction of the Make It Right homes in New

Orleans.  During the relevant time period, defendant Turner held a position of

authority and control over the management of the Foundation, its funds, assets,

and operations by serving as a member of the board, and has owed, and continues

to owe fiduciary duties of care and loyalty to the foundation and to its charitable

beneficiaries.  Defendant Turner also had a duty to act in good faith, and in the

best interest of the Foundation, including making reasonable inquiries when other

officers, directors, and/or employees made misrepresentations, or failed to act in

good faith, which he failed to do.

N.   TANYA HARRIS, who, upon information and belief is a person of the full age

of majority who, upon information and belief, is a resident of and domiciled in

New Orleans, Louisiana who at all relevant times herein was and is an employee

of  MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW

ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS

HOUSING LLC, (the Foundation).  At all times relevant hereto, defendant,

Harris made promises to investigate damages and/or defects to the Make It Right

Homes and to report to the homeowners the findings of the investigation and to

repair the damages.  At present, Defendant Harris is engaged in an attempt to

defraud the residents of the Make It Right community by again promising to

repair their property but before providing repairs, requiring the homeowners to

sign a "package" without disclosing to the residents that the "package" contains a

non-disclosure agreement and a binding arbitration agreement.

O.   DOES 1-50  are the fictitious names of key employees, contractors, architects,

officers, and directors  and/or insurers of same, during the time set forth in the

complaint, and those who have acted on behalf of or as agent, servant, or

8

employee of one or more of the named defendants, or who have participated or acted in concert with one or more of the named defendants, but whose true names and capacities, or acts or inactions, whether individual, corporate, or otherwise, are presently unknown to plaintiff. Upon information and belief, the named defendants and Does 1-50 have directly and/or indirectly participated in and are responsible for the acts and omissions, and fraud, which are more specifically described herein. Because plaintiffs are presently uninformed as to the true names and capacities of Does 1-50, plaintiffs sue them by fictitious names but will seek leave to substitute their names when their true names are discovered.

3.

The allegations at issue in this action took place in New Orleans, Louisiana and venue is proper in Orleans Parish, Louisiana.

## CLASS ACTION ALLEGATIONS

4.

Plaintiffs seek to represent the following class of individuals: *All persons who have purchased a home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Lousiana from August 15, 2007 to the present, and/or who subsequently purchased a home from an original purchase of a Make It Right home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Louisiana from August 15, 2007 to the present.*

5.

Excluded from the class are the defendants, and their officers, directors, and employees.

6.

The putative class meets the prerequisites required under Louisiana Law for certification as a class action because, among other reasons:

a.   The putative class members are so numerous that joinder of all members is impracticable.

b.   There are questions of law or fact common to the class.

c.   The claims or defenses of the representative parties are typical of the claims or defenses of the class.

9

d.  The representative parties will fairly and adequately protect the interests of the class.

e.  The class has been defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

f.  The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class

## PRELIMINARY ALLEGATIONS

7.

Make it Right Foundation was incorporated on August 15, 2007, as a Delaware not-for-profit corporation.  The stated primary objective of the Foundation was to "improve the design and performance of **affordable housing**."  The Foundation's primary goal is "to provide high-quality, energy-efficient housing to families in need, and to improve the development of communities in which they live."  "The organization's first project was to assist in the sustainable redevelopment of New Orleans, in particular, the Lower 9th Ward."  The initial stated mission for this project was "to be a catalyst for redevelopment by building a neighborhood comprised of safe and health homes, inspired by Cradle to Cradle thinking, with an emphasis on high quality of design, while preserving the spirit of the community's culture."  (See below tax filing:

8.

The Foundation was begun by actor, Brad Pitt to help bring back the Lower Ninth Ward.

9.

The Foundation's stated intent to achieve its purposes was to build **"sustainable architecture"** that "meet Leed Platinum Requirements."

10.

The homeowners who lost everything in Hurricane Katrina were and are extremely grateful to Mr. Pitt for spearheading the rebuilding of the Lower Ninth Ward because their neighborhood housed more than their homes.  It housed their *community*.

11.

In 2008, to further its goal, the Foundation set up two single member LLC subsidiaries: Make It Right – New Orleans, LLC and Make It Right – New Orleans Housing, LLC.

12.

On November 4, 2009, the Foundation set up a for-profit subsidiary, Make It Right-Solar, Inc.  MIR Solar is in the business of leasing solar panels and related equipment and servicing of such equipment to Make It Right homeowners "as well as other homes in New Orleans, as noted in the Foundation's tax filing below:

| Schedule O (Form 990) 2009 | Page 2 |
| --- | --- |
| Name of the organization<br>MAKE IT RIGHT FOUNDATION | Employer identification number<br>26-0723027 |

15)   CREATED A FOR-PROFIT ENTITY (OWNED BY THE MAKE IT RIGHT
FOUNDATION) TO MANAGE THE REMAINING SOLAR PHOTOVOLTAIC INSTALLATIONS ON
MAKE IT RIGHT HOMES AS WELL AS OTHER HOMES IN NEW ORLEANS.

Through this for-profit subsidiary, Make It Right's subsidiary owns all of the solar panels placed on the property and leases same to the homeowners, thereby retaining the right to all federal and/or state tax credits.

13.

The Foundation represented that they partnered with a consortium of nonprofits to submit applications for federal grants, including HUD's Neighborhood stabilization Program II.  The Foundation's primary purpose is to build affordable green homes; however, on a limited and as needed basis, the Foundation sometimes provided homeowner assistance funds, closing costs

assistance and forgivable loans to homeowners participating in the program. These loans were referred to as "soft second mortgages". Homeowner assistance funds are also supposed to be provided to Make it Right Homeowners for repairs on their homes. The closing costs assistance program helps homeowners pay closing transaction costs associated with the purchase of their home. The forgivable loans assist families with covering the funding gap between the sales price of their home and their mortgage.

14.

**No Make It Right homeowner received their home for free. The Make It Right homeowners are obligated under conventional mortgages to pay for their home. At most, some homeowners received second soft mortgages from Make It Right, or first time homebuyer grants from the City of New Orleans.**

15.

The Foundation provided the "designs" free to the homeowners. The housing construction was to be *affordable*. The houses were **never free**. The Make It Right homeowners are obligated to pay monthly mortgages for their properties most of which are on a 30 year term.

16.

The Foundation represented in tax filings that it has a strong management team with experience in operations, accounting, and finance and that it formed an advisory Board that included six members who had significant experience in real estate development and finance, operations, architecture and entrepreneurism.

17.

The Foundation also represented that its Treasurer/Secretary is a Certified Public Accountant who is the chief financial officer of a real estate investment firm where he oversees investment level financial reporting and compliance matters. The Foundation represented its Chief Operating Officer was experienced in operations, finance, and real estate. The Foundation assured that "together, with the Board of Directors and Advisory Board, the Management Team is able to manage Make it Right effectively."

Schedule D (Form 990) 2015                                                                    Page 2
Name of the organization                                                      Employer identification number
MAKE IT RIGHT FOUNDATION                                                      26-0723027

THE ADVISORY BOARD HAS SIGNIFICANT EXPERIENCE IN REAL ESTATE DEVELOPMENT AND FINANCE, OPERATIONS, ARCHITECTURE AND ENTREPRENEURIALISM. MAKE IT RIGHT HAS A STRONG MANAGEMENT TEAM WITH EXPERIENCE IN OPERATIONS, ACCOUNTING AND FINANCE. THE TREASURER/SECRETARY IS THE CHIEF FINANCIAL OFFICER OF A REAL ESTATE INVESTMENT FIRM WHERE HE OVERSEES INVESTMENT LEVEL FINANCIAL REPORTING AND COMPLIANCE MATTERS. HE IS A CERTIFIED PUBLIC ACCOUNTANT. THE CHIEF OPERATING OFFICER HAS EXPERIENCE IN OPERATIONS, FINANCE AND REAL ESTATE. TOGETHER, WITH THE BOARD OF THE DIRECTORS AND ADVISORY BOARD, THE MANAGEMENT TEAM IS ABLE TO MANAGE MAKE IT RIGHT EFFECTIVELY.

18.

The original plan was for the Foundation to build 150 energy efficient, safe, sustainable homes in the Lower Ninth Ward in New Orleans, Louisiana.

19.

In 2010, the Foundation began operations to develop affordable, sustainable housing in New Jersey, in addition to its development in Louisiana.

20.

In 2010, even though the original goal to build 150 safe, affordable, green housing was not complete in New Orleans, the Foundation was awarded two NSP grants through the Housing and Urban Development Neighborhood Stabilization Program to provide 4.9 Million in funds to allow the Foundation to continue to build homes in the lower Ninth Ward and Newark.

21.

By the end of 2011, the Foundation built 73 of the intended 105 houses in New Orleans, Louisiana.

22.

In 2011, the Foundation began an "ambitious new project" in a transitional urban community in Kansas City to provide affordable housing for 150 residents.

23.

In 2012, the Foundation completed a 56 unit multi-family building for disabled veterans in Newark, New Jersey.

24.

During 2012, the Foundation set up an additional single member not-for-profit subsidiary

13

to assist in the development and operation of apartments in Kansas City, Missouri.   In 2012, the
Foundation continued with the urban community project in Kansas City.

25.

In 2013, the Foundation expanded its developments of low cost, sustainable homes to
Fort Peck, Montana.

26.

In the 2013 federal Form 990 tax filing, the Foundation  identified issues related to
building materials used in the construction of completed homes and also identified issues related
to the design of certain homes that required significant repair costs; however, despite this
knowledge, the Foundation never provided homeowners with notice of these design and material
defects and therefore fraudulently deprived  homeowners of their right to pursue legal actions
under Louisiana's New Home Warranty Act, codified at R.S. 9:3141 *et seq*.  The Foundation
recognized in tax filings, excerpted below, that its warranty liability was in excess of 4 Million,
but the Foundation never provided homeowners with notice of the extent of problems that the
Foundation discovered. .

Make It Right Foundation and Subsidiaries

Warranty and Repair Liability
During 2013, the Foundation identified issues related to certain materials used in the construction of the
completed homes and certain designs of homes that required significant repair costs.  As such, the Foundation
recognized a warranty and repair liability in the accompanying consolidated statement of financial positions of
$2,968,714 and $1,325,996 as of December 31, 2014 and 2013, respectively, for the estimated construction repair
costs to be incurred in subsequent periods. The Foundation recognized approximately $2,500,000 and $1,800,000
of repair and warranty expense during the years ended December 31, 2014 and 2013, respectively. These
expenses are classified as Program Expense in the accompanying consolidated statement of activities and changes
in net assets.

27.

On February 13, 2015, the Foundation entered into a contractor agreement whereby the
Foundation is the general contractor for the construction of single-family units, a sports court and
a warming house in Poplar, Montana, within the boundaries of the Fort Peck Indian Reservation.

28.

During late 2016, 2017 and early 2018, Make It Right Foundation arranged for a number
of the Make It Right Homes in the Lower Ninth Ward to be inspected by engineers, allegedly
brought in specifically to render a report on the state of the Make It Right homes.

29.

Upon information and belief, the Engineering firm which conducted the inspections was

14

Simpson Gumpertz & Heger, a national engineering firm that designs, investigates, and rehabilitates structures and materials. Engineers from the Boston and Houston offices conducted inspections.

30.

Homeowners repeatedly requested the engineering reports, but were either advised that they reports were not yet ready or their requests were repeatedly ignored.

31.

Because the homeowners continued to believe in Mr. Brad Pitt and the Make It Right Foundation, the homeowners detrimentally relied upon the false promises that they would receive the engineering report for their respective homes.

32.

Based upon information and belief, the engineers discovered many issues across the homes, but despite repeated promises from multiple members of the putative class, the Foundation continued to fail to provide homeowners with reports, or other notice of the extent of problems that the Foundation discovered, even though the Foundation, who has in-house legal counsel, was aware or should have been aware that the time limit for most homeowners to proceed under the New Home Warranty Act, La. R.S. 9:3141 *et seq* would be lost if the homeowners continued to patiently await the reports.

33.

Upon information and belief, this past week, **defendants, Mazzuto and Harris** have again made promises that they will produce the engineering report, when it is received, but that the homeowner needs to sign a "packet" to begin the repairs. The packet contains a non-disclosure document and a binding arbitration document. The defendants do not explain to the homeowners what those documents are. Instead, the defendants attempt to **fraudulently** obtain signatures on agreements that would deprive homeowners of important legal rights, while the homeowners are under duress

34.

Homeowners began to be aware of problems with their home as early as 2013, 2014, but detrimentally relied upon the continuing promises of the Foundation and its agents and employees that the Foundation intended to repair the problems. The homeowners justifiably

15

relied upon these promises because the Foundation did make arrangements for inspections by engineers.

35.

Upon information and belief, defendants, **James Mazzuto and Tanya Harris** were involved in the scheduling of these engineering inspections; were involved in communicating with the Make It Right homeowners that inspections were taking place; and further promised to provide the Make It Right homeowners with a report of their home's inspections.

36.

Upon information and belief, the attempt to fraudulently mislead homeowners into signing non-disclosure agreements and binding arbitration agreements was developed after publicity of Make It Right's failures and the deteriorating condition of the homes was recently published on the Internet.

37.

By written notice dated September 7, 2018, counsel for the putative class has demanded that Make It Right produce copies of all non-disclosure agreements and binding arbitration agreements wrongfully obtained by them under duress.

38.

To date, despite months and/or years of multiple requests, the defendants have failed to "make it right" and/or refused to produce the engineering reports.

39.

Upon information and belief, Make It Right has re-purchased some of homes that could not be properly repaired.

40.

Upon information and belief, Make It Right continues to own a number of undeveloped lots.

41.

Upon information and belief, Make It Right has failed to pay property taxes due to the City of New Orleans on many of the properties it owns, and is therefore delinquent.

42.

The Foundation has not filed the required federal tax returns for the years 2016 or 2017,

according to its website, and thus, the financial status of the Foundation cannot be ascertained after December 31, 2015.

43.

The Foundation has stopped construction of new homes in the Lower Ninth Ward, despite having constructed only a total of 109 Make It Right Homes in the neighborhood. The Foundation has virtually ceased all repair activity on the 109 Make It Right Homes, with the exception of a few properties some of which appear to be under repair, without the appropriate City building permits.

44.

Lloyd Francis and Jennifer DeCuir, individually, and as representatives of the putative class, are concerned that the defendant, Foundation and its related entities are not financially solvent. This fear has caused the class representatives and the putative class **severe mental distress** because the homeowners owe mortgages on their property and will continue to owe mortgages on their properties for 20 or more years and the homeowners are gravely concerned that their homes, which suffer serious structural problems, will not last as long as their mortgages.

45.

Defendants, **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC** (the Foundation) held themselves out to the general public, specifically, the general public in the State of Louisiana, as hiring and training local general contractors, workers, and laborers in green building practices, with **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation) serving as the site superintendent, ordering all materials, scheduling timelines, ensuring quality control, and handling homeowner maintenance.

46.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** held themselves out to the general public as the purchaser of quality materials. The continued failure to replace and repair defective products, despite promises to the contrary is a continuing

tort within the meaning of Louisiana law.

47.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** represent to the general public and purchasers like plaintiffs herein, that it ensures our homeowners live in sustainable, innovative homes, energy efficient, green, high-quality and healthy homes.  See, for example,  their website, excerpted below.   The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.



48.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,**

18

promised homeowners they would receive a quality built, energy efficient, sustainable home; that would withstand the ravages of time and severe weather. The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.

49.

Based on false representations, false assurances, and false promises made by **DEFENDANTS, MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III,** and **JAMES MAZZUTO,** and as reinforced from the false representations, assurances and promises contained in the websites set forth hereinabove and in the printed literature provided to plaintiffs at their various meetings with the defendants, plaintiffs were induced to sign building contracts with defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC.**

50.

Plaintiffs' homes, designed, constructed, built, and/or sold by defendants herein were deficiently constructed and built, and/or used such defective products which caused a multitude of damages, including but not limited to:

   a.   Trapped water and moisture resulting from the construction defects has resulted in the growth of mold and other bacteria and has resulted in delamination of building materials.

   b.   Failure to properly vent properties has caused air quality problems;

   c.   Structural problems

   d.   Electrical problems, including but not limited to faulty wiring, causing fire.

   e.   Plumbing problems

   f.   Rotten wood;

   g.   Use of improper building supplies has caused porches rot;

   h.   Use of improper building techniques has caused stair railings to fail.

   i.   Any and all other defects to be discovered.

   j.   HVAC problems.

51.

The defendants' misrepresentation, deception, and promises have caused and will continue to cause plaintiffs to suffer significant mental distress.

52.

News of the problems with the Make It Right Homes has been published in the public domain and plaintiffs are unable to sell their properties. Plaintiffs have and will **continue** to suffer a diminution of value of their property as a result of the actions and inactions of defendants, all as set forth hereinabove.

53.

Plaintiffs have and will continue to suffer financial loss for necessary repairs.

## FIRST CAUSE OF ACTION

## UNFAIR TRADE PRACTICES

54.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

55.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** had a duty to act fairly with the plaintiffs herein.

56.

Pursuant to La. R.S. 51:1405, *et seq.*, The Louisiana Unfair Trade Practices Act (LUTPA), unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

57.

Defendants', websites, marketing brochures, public comments, news and other publications, and sales promises by the salesman and the President and/or general manager were all designed to lead plaintiffs herein, unsuspecting public consumers, who had already been traumatized and worn down by a devastating hurricane which destroyed their home and all of their possessions, into believing that defendants would provide plaintiffs with a well constructed,

energy efficient, sustainable home which would not be rampant with defects which have or could render their new home unlivable and/or unsaleable. Plaintiffs were misled into believing that defendants and their employees would work with them until they were satisfied with the construction and finishing of the new home. Plaintiffs were misled into believing that the warranties offered would be adhered to. Plaintiffs were misled into believing that they were purchasing a home that would withstand the local climate.

58.

Plaintiffs were further misled into believing that Make It Right would not intentionally deceive them about their warranties and/or about any defects Make It Right discovered.

59.

When Plaintiffs began to notice problems and reported the problems to Make It Right, Plaintiffs were misled into believing that Make It Right would, in fact, **make it right**.

60.

When Make it Right began inspections on homes in 2016, Plaintiffs were misled into believing that they would receive a report from the Engineers which would detail the problems with their properties and that Make It Right would, in fact, **make it right**.

61.

Plaintiffs as a group are grateful that Brad Pitt put together the Foundation to provide them with the designs, to build and sell them what they believed were affordable, energy efficient, sustainable, and safe homes. Plaintiffs, as a group, are grateful that those in need were assisted with closing costs and down payments. But plaintiffs, as a group, owe significant mortgages that they cannot escape. Plaintiffs cannot sell their homes because no purchaser wants to buy a Make It Right Home. And so, Plaintiffs are left with no other choice but to file these proceedings to **make Make It Right make it right**.

62.

Section 1409 of the Unfair Trade Practices Act creates a private cause of action under LUTPA for any person who suffers any ascertainable loss of money or movable property as a result of the use or employment by another person of an unfair or deceptive method, act or practice.

63.

Plaintiffs here have suffered ascertainable financial loss as a result of the use or

employment by defendants of unfair and deceptive methods, acts, and practices.

64.

Defendants, **THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER**, as Directors and Officers of the Board of Directors of the defendant entities, had a duty of reasonable inquiry to insure that the homes were properly constructed and, once it became known to the Board, at least by 2013, based on their federal 990 tax form, of the defective condition of the homes; and of the significant expense required to make it right; therefore, these defendants had a duty of reasonable inquiry to insure that the plaintiffs were properly notified of the defects and that the homes were properly repaired.

65.

The Board engaged in unfair trade practices when it chose to support management's decision not to notify the homeowners of the significant problems with their property, resulting in a loss of legal rights to the homeowners, and/or when the Board members failed to implement a plan to rectify the problem.

66.

Instead of conducting repairs openly, defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** deceptively obtained non-disclosure agreements from plaintiffs, without providing plaintiffs with full disclosure, resulting in a loss of important legal rights, even though these defendants stated awareness of their obligations to repair the properties in their 2013 federal tax form 990 filing, resulting in unfair trade practices.

67.

Upon information and belief, the Foundation's rapid expansion into other states, without completion of the mission in New Orleans, resulted in a depletion of funds, resources, and

22

employee capital, which resulted in the Foundation's inability to complete the known and necessary repairs in New Orleans.

68.

Defendants, **THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER**, as Directors and Officers of the Board of Directors of the defendant entities had a good faith duty and a fiduciary duty to ensure that the funds slotted for the New Orleans properties were not redirected. These Directors and Officers of the Board instead engaged in unfair trade practices which unfairly placed the New Orleans homeowners at a disadvantage.

69.

Pursuant to the Louisiana Unfair Trade Practices Act, plaintiffs seek and are entitled to actual damages, attorney's fees, treble damages, costs, an amount for mental distress and pain and suffering repair costs, as well as the diminished value of their property (Stigma damages), as a result of defendants' misrepresentation, deception, and unfair trade practices, in an amount to be determined in accordance with law.

70.

Plaintiffs also seek interest from date of judicial demand until paid on all sums to which they are entitled and any other relief to which they may be entitled. In connection therewith, plaintiffs alternatively set forth the following causes of action:

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACTUAL OBLIGATIONS

### And/Or alternatively

## DETRIMENTAL RELIANCE

71.

Under these causes of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

72.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** entered into contracts with plaintiffs for the construction, warranty, and/or repair of their homes.

23

73.

The contracts and promises of defendants were that the plaintiffs would be provided with safe, energy efficient, green homes, free from construction and material defects.

74.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** have breached their contractual obligations of warranty.

75.

Plaintiffs detrimentally relied upon the promises and agreements made by defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** and plaintiffs have and will continue to suffer damages as a result of defendants' breach of contract and promises.  Plaintiffs seek damages for breach of contract, for damages suffered as a result of their detrimental reliance on the promises and agreements made by defendants, and for any and all other relief to which they may be entitled under Louisiana law.

## THIRD CAUSE OF ACTION
## CONTINUING TORT

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

76.

Defendants were negligent in accepting the original flawed designs and defective, inappropriate and/or insufficient materials.

77.

Defendants were negligent in failing to inform the homeowners of the design defects and flaws and of the material defects and flaws.

78.

Defendants failure to effect repairs, replace defective designs and products, and failure to properly and fully apprise the homeowners of the problems constitutes a continuing tort within

the meaning of Louisiana law.

## FOURTH CAUSE OF ACTION
### FRAUD

79.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

80.

Defendants, MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50 materially misrepresented material facts and/or intentionally suppressed truth in meetings with plaintiffs, all as more fully set forth herein, including but not limited to the following misrepresentations:

1. That their homes contained defective materials;

2. That their homes were defectively designed;

3. That their homes were defectively and improperly constructed;

4. That they would provide engineering reports to the homeowners on their own properties;

5. That they would give up important legal rights by signing documents to obtain repairs on their properties;

6. That the Foundation was not obligated to perform the repairs, under the New Home Warranty Act, without the need for the homeowners to give up important legal rights;

81.

From 2013 to the present, defendants, MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50 promised repairs and further promised to produce the engineering reports, with the intent to deceive plaintiffs to forestall legal proceedings and/or for other reasons unknown to plaintiffs. Defendants were aware that they were financially unable to perform the massive repairs necessary to bring all of plaintiffs' homes

25

up to the promised standard of a safe, green, healthy, and well-constructed, affordable home. The failure of these defendants to properly inform the homeowners of the engineering defects and material defects proves that these **Defendants never intended to make it right**. Defendants misrepresented and suppressed truth to obtain an unfair advantage from plaintiffs, i.e., the signing of non-disclosure documents and binding arbitration documents.

82.

Since 2013, defendants, through their representatives, have fraudulently induced plaintiffs into signing non-disclosure documents and binding arbitration agreements by withholding important information from them and by indicating that the repairs to their property could only be performed if the homeowners signed the documents in the packet.

83.

Because the homeowners were so grateful to Brad Pitt and all Make It Right representatives, a relation of confidence existed that resulted in the homeowners reasonable reliance on defendants' assertions and representations.

84.

Plaintiffs justifiably relied upon the representations made by defendants, unaware that defendants were making material and intentional misrepresentations of fact, to their resulting injury.

85.

Plaintiffs are entitled to have defendants make it right or alternatively to rescission because of the fraudulent actions of defendants identified in this cause of action.

86.

Plaintiffs are entitled to costs, attorney's fees, interest, and all legal relief resulting from defendants' fraudulent actions and omissions.

### FIFTH CAUSE OF ACTION
### NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS

87.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

88.

The conduct of the Defendants as set forth herein was reckless and wanton, constituting

26

the tort of negligent infliction of emotional distress, which resulted in damages to plaintiffs.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

89.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

90.

The defendants allowed putative class members and members of their family to be exposed to mold and other toxins knowing that such exposure would cause physical injury and distress to the plaintiffs and their family.

91.

Defendants were aware that homes were defectively constructed in such a manner that would allow water intrusion which, in fact, resulted in mold.

92.

Defendants were aware that some home designs were defective in such a manner that allowed water intrusion which, in fact resulted in mold.

93.

Defendants obtained air quality studies on a number of homes which, in fact revealed dangerous mold growth, including black mold growth.

94.

The defendants' failure to abate the mold, to repair the defects which resulted in mold and to intentionally withhold information from homeowners of these problems constitutes the intentional inflection of emotional distress on each plaintiff and has proximately caused emotional distress in each of the plaintiffs and their families.

## DAMAGES

95.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will incur significant costs to repair their property.

96.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will lose the use of their property and will incur significant costs to

27

relocate either temporarily or permanently.

97.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and

each class member, has or will incur diminution of value, also known as stigma damages.

98.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and

each class member, has suffered mental distress.

99.

As a proximate result of the defendants' unfair trade practices and fraud, the plaintiffs

and each class member, has or will incur significant costs and attorney's fees.

100.

Defendants are liable unto plaintiffs jointly, severally, and in solido.

101.

Petitioners are entitled to a trial by jury.

WHEREFORE, plaintiffs, individually and on behalf of the class pray that the Court

certify the class herein, appointing them as class representatives and that the defendants be

served with a copy of this petition and that they be cited to appear and answer same, and after

due proceedings be had, including trial by jury, that judgment be rendered in their favor on

behalf of all class members against the defendants, **MAKE IT RIGHT-NEW ORLEANS,**

**LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS**

**HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W.**

**WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE**

**COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE**

**AND JOHN DOES 1-50** individually, jointly, severally, and in solido, for all damages,

including treble damages, attorneys fees, costs, expert fees, interest, and any other remedy

allowed by law.

Respectfully submitted,

RON AUSTIN LAW L.L.C.

Ron A. Austin, #23630
Catherine Hilton, #27238
920 4th Street
Gretna, Louisiana 70053
Telephone:  504-227-8100
Facsimile: 504-227-8122
Email: chilton@ronaustinlaw.com
Email: raustin@ronaustinlaw.com
Attorneys for Plaintiffs, Lloyd Francis and
Jennifer DeCuir individually and on behalf of
The Putative Class

**PLEASE SERVE:**

1. **MAKE IT RIGHT-NEW ORLEANS, LLC**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

2. **MAKE IT RIGHT FOUNDATION**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

3. **MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

4. **THOMAS F. DARDEN, III**
   Address unknown

5. **JAMES MAZZUTO**
   912 Magazine Street
   New Orleans, LA  70130

6. **SAMUEL W. WHITT**
   **VIA LONG ARM STATUTE**
   4141 Parklake Drive
   Suite 200
   Raleigh, NC  27609

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

29

7. S.H. "JIM" FOGLEMAN
   <u>VIA LONG ARM STATUTE</u>
   3201Tall Tree Place
   Raleigh, NC 27607

8. LATOYA KING
   <u>VIA LONG ARM STATUTE</u>
   6339 Glenwood Avenue
   Raleigh, NC  27612

9. VERONICA TAYLOR
   Address unknown

10. MAURICE COLEMAN
    1649 Royal Troon Circle
    Zachary, LA  70791

11. BRAD PITT
    9150 Wilshire Blvd.
    Beverly Hills, CA 90212

12. JOHN SADER
    <u>VIA LONG ARM STATUTE</u>
    25240 Franklin Park Drive
    Franklin, MI  48025

13. CRAIG TURNER
    8233 Panola Street
    New Orleans, LA  70118

14. TANYA HARRIS
    2422 Dubreuil Street
    New Orleans, LA  70117

RON AUSTIN & ASSOCIATES, L.L.C.

ATTORNEYS AT LAW

Ron A. Austin                                                        of counsel
Jeffrey P. Green                                              Ramona G. Fernandez
Catherine Hilton
Jevan Fleming
John Stephens

September 20, 2018

**VIA CERTIFIED MAIL: 7018 0680 0001 4136 1884**
S.H. "Jim" Fogleman
3201 Tall Tree Place
Raleigh, NC 27607

       Re:   *Francis, Lloyd, et al vs. Make It Right-New Orleans, LLC et al*
            *CDC Orleans Parish*
            *No. 2018-08977 "Div. B 05"*

Dear Mr. Fogleman,

       Please find enclosed a certified copy of the Petition for Damages and citation filed in connection with the above referenced matter, via Certified Mail, return receipt requested. The Petition is being served upon you via the Louisiana Long Arm Statute.

       Please answer within the legal delays allowed by law.

       With kind regards, I remain

                         Very truly yours,

                         RON AUSTIN & ASSOCIATES, L.L.C.

                         Catherine Hilton

CH/jt
Enclosure

ATTORNEY'S NAME:   Austin, Ron A 23630
AND ADDRESS:          920 4th Street , Gretna, LA 70053

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2018-08977              **DIVISION: B**              **SECTION: 05**

FRANCIS, LLOYD  ET AL

Versus

MAKE IT RIGHT–NEW ORELANS, LLC ET AL

### CITATION – LONG ARM

TO:            S.H. "JIM" FOGLEMAN

THROUGH:    THE LOUISIANA LONG ARM STATUTE

                3201 TALL TREE PLACE, RALEIGH, NC 27607

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the

Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)

days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through

the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA September 18, 2018**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by**
**Damian Clark, Deputy Clerk**

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Class Action PETITON FOR DAMAGES** | **Class Action PETITON FOR DAMAGES** |
| ON **S.H. "JIM" FOGLEMAN** | ON **S.H. "JIM" FOGLEMAN** |
| THROUGH: **THE LOUISIANA LONG ARM STATUTE** | THROUGH: **THE LOUISIANA LONG ARM STATUTE** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and |
| Deputy Sheriff of _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Mileage: $ _____ | HIM/HER the said S.H. "JIM" FOGLEMAN being absent from the domicile at time of said service. |
| _____ / ENTERED / | Returned the same day |
| PAPER            RETURN | _____ No. _____ |
| ___/_____ ___/_____ | Deputy Sheriff of _____ |
| SERIAL NO.     DEPUTY     PARISH | |

ID: 10017155                                    Page 1 of 1

ATTORNEY'S NAME: Austin, Ron A 23630
AND ADDRESS: 920 4th Street , Gretna, LA 70053

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2018-08977      **DIVISION: B**      SECTION: 05

### FRANCIS, LLOYD ET AL

Versus

### MAKE IT RIGHT-NEW ORELANS, LLC ET AL

### CITATION - LONG ARM

TO:      S.H. "JIM" FOGLEMAN

THROUGH:      THE LOUISIANA LONG ARM STATUTE

         3201 TALL TREE PLACE, RALEIGH, NC 27607

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)
days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through
the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA September 18, 2018**

**Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA**

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Damian Clark, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Class Action PETITON FOR DAMAGES** | **Class Action PETITON FOR DAMAGES** |
| ON **S.H. "JIM" FOGLEMAN** | ON **S.H. "JIM" FOGLEMAN** |
| THROUGH: **THE LOUISIANA LONG ARM STATUTE** | THROUGH: **THE LOUISIANA LONG ARM STATUTE** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Deputy Sheriff of _____ | HIM/HER the said **S.H. "JIM" FOGLEMAN** being absent from the domicile at time of said service. |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER    RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ |  |
| SERIAL NO.   DEPUTY   PARISH |  |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

2018 SEP -7 ☐ 3:31

NO.

DIVISION " "

CIVIL DISTRICT COURT

LLOYD FRANCIS and JENNIFER DECUIR
On behalf of themselves and on behalf of all others similarly situated

VERSUS

MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION
MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III,
JAMES MAZZUTO, SAMUEL W. WHITT,
S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, BRAD PITT,
MAURICE COLEMAN, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE
AND JOHN DOES 1-50

FILED:_____          _____

DEPUTY CLERK

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come **petitioners, Lloyd Francis,**

**and Jennifer Decuir**, individually and on behalf of all others similarly situated, who respectfully

represent:

1.

**Lloyd Francis and Jennifer Decuir** are persons of the full age of majority, and residents

of the Parish of Orleans, and are representative of the plaintiff class in this action, who aver:

A.    Plaintiffs and Class Members are individuals who have suffered economic losses,

property losses, and non-economic losses or injuries as a result of Defendants

actions and omissions, all as more fully set forth hereinafter, within six basic

categories:  Physical Personal Injury Tort Claims; Nonphysical Tort Claims;

Property Related Claims; Financial Claims; Mental Distress Claims; and Statutory

Claims.

B.    Plaintiffs and Class Members are individuals who purchased Make It Right

Homes from **MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT**

**RIGHT FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS**

**HOUSING, LLC.** based upon representations and promises of representatives of

**MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT RIGHT**

**FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS HOUSING,**

**LLC.** that they were purchasing quality built, green, sustainable homes designed

to withstand hurricane force winds.

2.

Made defendants herein are the following:

A.      **MAKE IT RIGHT FOUNDATION,**  a foreign not for profit foundation and/or
co-op, organized under the laws of the State of Delaware, authorized to do and
doing business in the State of Louisiana, Parish of Orleans, with a registered
Louisiana principal business establishment located at 912 Magazine Street, New
Orleans, Louisiana 70130, which foreign foundation has appointed James
Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered
agent for service of process; Said defendant foundation designed and/or built
and/or sold and/or warranted and/or repaired homes, at all times relevant hereto,
in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New
Orleans, Louisiana.

B.      **MAKE IT RIGHT-NEW ORLEANS, LLC,** a foreign not for profit limited
liability company, organized under the laws of the State of Delaware, authorized
to do and doing business in the State of Louisiana, Parish of Orleans, with a
registered Louisiana principal business establishment located at 912 Magazine
Street, New Orleans, Louisiana 70130, which foreign foundation has appointed
James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its
registered agent for service of process; Said defendant foundation designed and/or
built and/or sold and/or warranted and/or repaired homes, at all times relevant
hereto,  in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward,
New Orleans, Louisiana.

C.      **MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** a foreign not for
profit limited liability company, organized under the laws of the State of
Delaware, authorized to do and doing business in the State of Louisiana, Parish of
Orleans, with a registered Louisiana principal business establishment located at
912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation
has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana
70130 as its registered agent for service of process; Said defendant foundation

2

designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

**Throughout this action, the Foundation and its subsidiaries are collectively referred to hereinafter as "the Foundation".**

D.     **THOMAS F. DARDEN, III**, on information and belief, a person of the full age of majority and a resident of the State of North Carolina, who at all times relevant hereto, was an Officer and/or Chief Executive Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (collectively, the Foundation) from 2007 through 2014. During the relevant time period, defendant Darden held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Darden also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do. At all times relevant hereto, Defendant Darden made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages.

E.     **JAMES MAZZUTO**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in the Parish of Orleans, State of Louisiana, who is Treasurer and/or Chief Operating Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation) from 2014 through the present, who assumed

3

the management responsibilities of former board member and CEO, Thomas Darden. During the relevant time period, defendant Mazzuto held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Mazzutto also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do. At all times relevant hereto, defendant, Mazzuto made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages. At present, Defendant Mazzuto is engaged in an attempt to defraud the residents of the Make It Right community by again promising to repair their property but before providing repairs, requiring the homeowners to sign a "package" without disclosing to the residents that the "package" contains a non-disclosure agreement and a binding arbitration agreement.

F.   **SAMUEL W. WHITT**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Raleigh, North Carolina, who is a former Chairperson of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he held from 2007 through 2014. During the relevant time period, defendant Whitt held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Whitt also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do. On

4

information and belief, defendant, Whitt, is a licensed attorney at a current member of the North Carolina State Bar.

G.   **S.H. "JIM" FOGLEMAN,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Raleigh, North Carolina, who is a former Treasurer/Secretary of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation), a position he held from 2007 through 2014.  During the relevant time period, defendant Fogelman held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Fogelman also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.  On information and belief, defendant, Fogelman, is a Certified Public Accountant.

H.   **LATOYA KING,** a person of the full age of majority and a resident of Raleigh, North Carolina, who is a former Vice President of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation), a position she held from 2007 through 2014.  During the relevant time period, defendant King held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant King also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which she failed to do.

5

I.      **VERONICA TAYLOR**, a person of the full age of majority who, upon information and belief, who is a former Chief Operating Officer of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position she held from 2007 through 2010.  During the relevant time period, defendant Taylor held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Taylor also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which she failed to do.

J.      **MAURICE COLEMAN**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Zachary, Louisiana, who is a former member of the Board of Directors of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he held from 2007 through 2014.  During the relevant time period, defendant Coleman held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Coleman also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

K.      **BRAD PITT**, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Beverly Hills, California who is a member of the Board of Directors of **MAKE IT RIGHT FOUNDATION**

AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, (the Foundation), a position he held since 2007.  During the relevant time period, defendant Pitt held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Pitt also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

L.    **JOHN SADER,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in New Orleans, Louisiana who is a  former member of the Board of Directors and Director of Construction of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation), a position he held in 2010 when the majority of the Make It Right homes were being constructed in New Orleans.  In addition to being a Member of the Board of Directors, as  the Director of Construction defendant Sader oversaw the construction of the Make It Right homes in New Orleans.  During the relevant time period, defendant Sader held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Sader also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

M.    **CRAIG TURNER,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in New Orleans, Louisiana who is a former member of the Board of Directors of **MAKE IT RIGHT**

FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC,

AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,

(the Foundation), a position he held from 2011 through 2014, when the majority

of the Make It Right homes were being constructed in New Orleans.  In addition

to being a Member of the Board of Directors, defendant Turner was the Director

of Construction and oversaw the construction of the Make It Right homes in New

Orleans.  During the relevant time period, defendant Turner held a position of

authority and control over the management of the Foundation, its funds, assets,

and operations by serving as a member of the board, and has owed, and continues

to owe fiduciary duties of care and loyalty to the foundation and to its charitable

beneficiaries.  Defendant Turner also had a duty to act in good faith, and in the

best interest of the Foundation, including making reasonable inquiries when other

officers, directors, and/or employees made misrepresentations, or failed to act in

good faith, which he failed to do.

N.        TANYA HARRIS, who, upon information and belief is a person of the full age

of majority who, upon information and belief, is a resident of and domiciled in

New Orleans, Louisiana who at all relevant times herein was and is an employee

of  MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW

ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS

HOUSING LLC, (the Foundation).  At all times relevant hereto, defendant,

Harris made promises to investigate damages and/or defects to the Make It Right

Homes and to report to the homeowners the findings of the investigation and to

repair the damages.  At present, Defendant Harris is engaged in an attempt to

defraud the residents of the Make It Right community by again promising to

repair their property but before providing repairs, requiring the homeowners to

sign a "package" without disclosing to the residents that the "package" contains a

non-disclosure agreement and a binding arbitration agreement.

O.        DOES 1-50  are the fictitious names of key employees, contractors, architects,

officers, and directors  and/or insurers of same, during the time set forth in the

complaint, and those who have acted on behalf of or as agent, servant, or

employee of one or more of the named defendants, or who have participated or acted in concert with one or more of the named defendants, but whose true names and capacities, or acts or inactions, whether individual, corporate, or otherwise, are presently unknown to plaintiff.  Upon information and belief, the named defendants and Does 1-50 have directly and/or indirectly participated in and are responsible for the acts and omissions, and fraud, which are more specifically described herein.  Because plaintiffs are presently uninformed as to the true names and capacities of Does 1-50, plaintiffs sue them by fictitious names but will seek leave to substitute their names when their true names are discovered.

3.

The allegations at issue in this action took place in New Orleans, Louisiana and venue is proper in Orleans Parish, Louisiana.

## CLASS ACTION ALLEGATIONS

4.

Plaintiffs seek to represent the following class of individuals:  *All persons who have purchased a home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Lousiana from August 15, 2007 to the present, and/or who subsequently purchased a home from an original purchase of a Make It Right home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Louisiana from August 15, 2007 to the present.*

5.

Excluded from the class are the defendants, and their officers, directors, and employees.

6.

The putative class meets the prerequisites required under Louisiana Law for certification as a class action because, among other reasons:

a.  The putative class members are so numerous that joinder of all members is impracticable.

b.  There are questions of law or fact common to the class.

c.  The claims or defenses of the representative parties are typical of the claims or defenses of the class.

9

d.  The representative parties will fairly and adequately protect the interests of the class.

e.  The class has been defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

f.  The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class

## PRELIMINARY ALLEGATIONS

7.

Make it Right Foundation was incorporated on August 15, 2007, as a Delaware not-for-profit corporation.  The stated primary objective of the Foundation was to "improve the design and performance of **affordable housing**."  The Foundation's primary goal is "to provide high-quality, energy-efficient housing to families in need, and to improve the development of communities in which they live."  "The organization's first project was to assist in the sustainable redevelopment of New Orleans, in particular, the Lower 9th Ward."  The initial stated mission for this project was "to be a catalyst for redevelopment by building a neighborhood comprised of safe and health homes, inspired by Cradle to Cradle thinking, with an emphasis on high quality of design, while preserving the spirit of the community's culture."  (See below tax filing:

8.

The Foundation was begun by actor, Brad Pitt to help bring back the Lower Ninth Ward.

9.

The Foundation's stated intent to achieve its purposes was to build **"sustainable architecture"** that "meet Leed Platinum Requirements."

10.

The homeowners who lost everything in Hurricane Katrina were and are extremely grateful to Mr. Pitt for spearheading the rebuilding of the Lower Ninth Ward because their neighborhood housed more than their homes. It housed their *community*.

11.

In 2008, to further its goal, the Foundation set up two single member LLC subsidiaries: Make It Right – New Orleans, LLC and Make It Right – New Orleans Housing, LLC.

12.

On November 4, 2009, the Foundation set up a for-profit subsidiary, Make It Right-Solar, Inc. MIR Solar is in the business of leasing solar panels and related equipment and servicing of such equipment to Make It Right homeowners "as well as other homes in New Orleans, as noted in the Foundation's tax filing below:

| Schedule D (Form 990) 2009 | | Page 2 |
|---|---|---|
| Name of the organization: MAKE IT RIGHT FOUNDATION | | Employer Identification number 26-0723027 |
| 13) CREATED A FOR-PROFIT ENTITY (OWNED BY THE MAKE IT RIGHT FOUNDATION) TO MANAGE THE REMAINING SOLAR PHOTOVOLTAIC INSTALLATIONS ON MAKE IT RIGHT HOMES AS WELL AS OTHER HOMES IN NEW ORLEANS. | | |

**Through this for-profit subsidiary, Make It Right's subsidiary owns all of the solar panels placed on the property and leases same to the homeowners, thereby retaining the right to all federal and/or state tax credits.**

13.

The Foundation represented that they partnered with a consortium of nonprofits to submit applications for federal grants, including HUD's Neighborhood stabilization Program II. The Foundation's primary purpose is to build affordable green homes; however, on a limited and as needed basis, the Foundation sometimes provided homeowner assistance funds, closing costs

assistance and forgivable loans to homeowners participating in the program. These loans were referred to as "soft second mortgages". Homeowner assistance funds are also supposed to be provided to Make it Right Homeowners for repairs on their homes. The closing costs assistance program helps homeowners pay closing transaction costs associated with the purchase of their home. The forgivable loans assist families with covering the funding gap between the sales price of their home and their mortgage.

14.

**No Make It Right homeowner received their home for free. The Make It Right homeowners are obligated under conventional mortgages to pay for their home. At most, some homeowners received second soft mortgages from Make It Right, or first time homebuyer grants from the City of New Orleans.**

15.

The Foundation provided the "designs" free to the homeowners. The housing construction was to be *affordable*. The houses were **never free.** The Make It Right homeowners are obligated to pay monthly mortgages for their properties most of which are on a 30 year term.

16.

The Foundation represented in tax filings that it has a strong management team with experience in operations, accounting, and finance and that it formed an advisory Board that included six members who had significant experience in real estate development and finance, operations, architecture and entrepreneurism.

17.

The Foundation also represented that its Treasurer/Secretary is a Certified Public Accountant who is the chief financial officer of a real estate investment firm where he oversees investment level financial reporting and compliance matters. The Foundation represented its Chief Operating Officer was experienced in operations, finance, and real estate. The Foundation assured that "together, with the Board of Directors and Advisory Board, the Management Team is able to manage Make it Right effectively."

Schedule D (Form 990) 2009          Page 2
Name of the organization        Employer identification number
MAKE IT RIGHT FOUNDATION        26-0723027

THE ADVISORY BOARD HAS SIGNIFICANT EXPERIENCE IN REAL ESTATE DEVELOPMENT
AND FINANCE, OPERATIONS, ARCHITECTURE AND ENTREPRENEURISM. MAKE IT RIGHT
HAS A STRONG MANAGEMENT TEAM WITH EXPERIENCE IN OPERATIONS, ACCOUNTING
AND FINANCE. THE TREASURER/SECRETARY IS THE CHIEF FINANCIAL OFFICER OF A
REAL ESTATE INVESTMENT FIRM WHERE HE OVERSEES INVESTMENT LEVEL FINANCIAL
REPORTING AND COMPLIANCE MATTERS. HE IS A CERTIFIED PUBLIC ACCOUNTANT.
THE CHIEF OPERATING OFFICER HAS EXPERIENCE IN OPERATIONS, FINANCE AND
REAL ESTATE. TOGETHER, WITH THE BOARD OF THE DIRECTORS AND ADVISORY
BOARD, THE MANAGEMENT TEAM IS ABLE TO MANAGE MAKE IT RIGHT EFFECTIVELY.

18.

The original plan was for the Foundation to build 150 energy efficient, safe, sustainable homes in the Lower Ninth Ward in New Orleans, Louisiana.

19.

In 2010, the Foundation began operations to develop affordable, sustainable housing in New Jersey, in addition to its development in Louisiana.

20.

In 2010, even though the original goal to build 150 safe, affordable, green housing was not complete in New Orleans, the Foundation was awarded two NSP grants through the Housing and Urban Development Neighborhood Stabilization Program to provide 4.9 Million in funds to allow the Foundation to continue to build homes in the lower Ninth Ward and Newark.

21.

By the end of 2011, the Foundation built 73 of the intended 105 houses in New Orleans, Louisiana.

22.

In 2011, the Foundation began an "ambitious new project" in a transitional urban community in Kansas City to provide affordable housing for 150 residents.

23.

In 2012, the Foundation completed a 56 unit multi-family building for disabled veterans in Newark, New Jersey.

24.

During 2012, the Foundation set up an additional single member not-for-profit subsidiary

13

to assist in the development and operation of apartments in Kansas City, Missouri.  In 2012, the

Foundation continued with the urban community project in Kansas City.

25.

In 2013, the Foundation expanded its developments of low cost, sustainable homes to

Fort Peck, Montana.

26.

In the 2013 federal Form 990 tax-filing, the Foundation  identified issues related to

building materials used in the construction of completed homes and also identified issues related

to the design of certain homes that required significant repair costs; however, despite this

knowledge, the Foundation never provided homeowners with notice of these design and material

defects and therefore fraudulently deprived  homeowners of their right to pursue legal actions

under Louisiana's New Home Warranty Act, codified at R.S. 9:3141 *et seq*.  The Foundation

recognized in tax filings, excerpted below, that its warranty liability was in excess of 4 Million,

but the Foundation never provided homeowners with notice of the extent of problems that the

Foundation discovered.

Make It Right Foundation and Subsidiaries

**Warranty and Repair Liability**

During 2013, the Foundation identified issues related to certain materials used in the construction of the completed homes and certain designs of homes that required significant repair costs.  As such, the Foundation recognized a warranty and repair liability in the accompanying consolidated statement of financial positions of $2,968,714 and $1,525,996 as of December 31, 2014 and 2013, respectively, for the estimated construction repair costs to be incurred in subsequent periods.  The Foundation recognized approximately $3,500,000 and $1,800,000 of repair and warranty expense during the years ended December 31, 2014 and 2013, respectively.  These expenses are classified as Program Expense in the accompanying consolidated statement of activities and changes in net assets.

27.

On February 13, 2015, the Foundation entered into a contractor agreement whereby the

Foundation is the general contractor for the construction of single-family units, a sports court and

a warming house in Poplar, Montana, within the boundaries of the Fort Peck Indian Reservation.

28.

During late 2016, 2017 and early 2018, Make It Right Foundation arranged for a number

of the Make It Right Homes in the Lower Ninth Ward to be inspected by engineers, allegedly

brought in specifically to render a report on the state of the Make It Right homes.

29.

Upon information and belief, the Engineering firm which conducted the inspections was

14

Simpson Gumpertz & Heger, a national engineering firm that designs, investigates, and rehabilitates structures and materials. Engineers from the Boston and Houston offices conducted inspections.

30.

Homeowners repeatedly requested the engineering reports, but were either advised that they reports were not yet ready or their requests were repeatedly ignored.

31.

Because the homeowners continued to believe in Mr. Brad Pitt and the Make It Right Foundation, the homeowners detrimentally relied upon the false promises that they would receive the engineering report for their respective homes.

32.

Based upon information and belief, the engineers discovered many issues across the homes, but despite repeated promises from multiple members of the putative class, the Foundation continued to fail to provide homeowners with reports, or other notice of the extent of problems that the Foundation discovered, even though the Foundation, who has in-house legal counsel, was aware or should have been aware that the time limit for most homeowners to proceed under the New Home Warranty Act, La. R.S. 9:3141 *et seq* would be lost if the homeowners continued to patiently await the reports.

33.

Upon information and belief, this past week, **defendants, Mazzuto and Harris** have again made promises that they will produce the engineering report, when it is received, but that the homeowner needs to sign a "packet" to begin the repairs. The packet contains a non-disclosure document and a binding arbitration document. The defendants do not explain to the homeowners what those documents are. Instead, the defendants attempt to **fraudulently** obtain signatures on agreements that would deprive homeowners of important legal rights, while the homeowners are under duress

34.

Homeowners began to be aware of problems with their home as early as 2013, 2014, but detrimentally relied upon the continuing promises of the Foundation and its agents and employees that the Foundation intended to repair the problems. The homeowners justifiably

relied upon these promises because the Foundation did make arrangements for inspections by engineers.

35.

Upon information and belief, defendants, **James Mazzuto and Tanya Harris** were involved in the scheduling of these engineering inspections; were involved in communicating with the Make It Right homeowners that inspections were taking place; and further promised to provide the Make It Right homeowners with a report of their home's inspections.

36.

Upon information and belief, the attempt to fraudulently mislead homeowners into signing non-disclosure agreements and binding arbitration agreements was developed after publicity of Make It Right's failures and the deteriorating condition of the homes was recently published on the Internet.

37.

By written notice dated September 7, 2018, counsel for the putative class has demanded that Make It Right produce copies of all non-disclosure agreements and binding arbitration agreements wrongfully obtained by them under duress.

38.

To date, despite months and/or years of multiple requests, the defendants have failed to "make it right" and/or refused to produce the engineering reports.

39.

Upon information and belief, Make It Right has re-purchased some of homes that could not be properly repaired.

40.

Upon information and belief, Make It Right continues to own a number of undeveloped lots.

41.

Upon information and belief, Make It Right has failed to pay property taxes due to the City of New Orleans on many of the properties it owns, and is therefore delinquent.

42.

The Foundation has not filed the required federal tax returns for the years 2016 or 2017,

16

according to its website, and thus, the financial status of the Foundation cannot be ascertained after December 31, 2015.

43.

The Foundation has stopped construction of new homes in the Lower Ninth Ward, despite having constructed only a total of 109 Make It Right Homes in the neighborhood. The Foundation has virtually ceased all repair activity on the 109 Make It Right Homes, with the exception of a few properties some of which appear to be under repair, without the appropriate City building permits.

44.

Lloyd Francis and Jennifer DeCuir, individually, and as representatives of the putative class, are concerned that the defendant, Foundation and its related entities are not financially solvent. This fear has caused the class representatives and the putative class **severe mental distress** because the homeowners owe mortgages on their property and will continue to owe mortgages on their properties for 20 or more years and the homeowners are gravely concerned that their homes, which suffer serious structural problems, will not last as long as their mortgages.

45.

Defendants, **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC** (the Foundation) held themselves out to the general public, specifically, the general public in the State of Louisiana, as hiring and training local general contractors, workers, and laborers in green building practices, with **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation) serving as the site superintendent, ordering all materials, scheduling timelines, ensuring quality control, and handling homeowner maintenance.

46.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC**, held themselves out to the general public as the purchaser of quality materials. The continued failure to replace and repair defective products, despite promises to the contrary is a continuing

tort within the meaning of Louisiana law.

47.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** represent to the general public and purchasers like plaintiffs herein, that it ensures our homeowners live in sustainable, innovative homes, energy efficient, green, high-quality and healthy homes. See, for example, their website, excerpted below. The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.



## WHERE WE WORK

Make It Right began as an effort to rebuild safe, sustainable homes in New Orleans' Lower 9th Ward after Hurricane Katrina. Our work in New Orleans has led to innovations in affordable homebuilding — proof that high-quality, healthy homes can and should be available for everyone.

Today Make It Right is sharing our knowledge of affordable green homebuilding with communities around the country and around the world. While continuing to fulfill our commitment to New Orleans, we have helped build an apartment building for disabled veterans in Newark, NJ, broke ground on an ambitious community development in a blighted Kansas City, MO neighborhood and partnered with Native American tribes to build homes on the Fort Peck Reservation.

We continue to find innovative ways to help communities in need and educate others to change the way buildings are designed and built.

48.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,**

promised homeowners they would receive a quality built, energy efficient, sustainable home; that would withstand the ravages of time and severe weather.  The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.

49.

Based on false representations, false assurances, and false promises made by **DEFENDANTS, MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III, and JAMES MAZZUTO,** and as reinforced from the false representations, assurances and promises contained in the websites set forth hereinabove and in the printed literature provided to plaintiffs at their various meetings with the defendants, plaintiffs were induced to sign building contracts with defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC.**

50.

Plaintiffs' homes, designed, constructed, built, and/or sold by defendants herein were deficiently constructed and built, and/or used such defective products which  caused a multitude of damages, including but not limited to:

    a.    Trapped water and moisture resulting from the construction defects has resulted in the growth of mold and other bacteria and has resulted in delamination of building materials.

    b.    Failure to properly vent properties has caused air quality problems;

    c.    Structural problems

    d.    Electrical problems, including but not limited to faulty wiring, causing fire.

    e.    Plumbing problems

    f.    Rotten wood;

    g.    Use of improper building supplies has caused porches rot;

    h.    Use of improper building techniques has caused stair railings to fail.

    i.    Any and all other defects to be discovered.

    j.    HVAC problems.

51.

The defendants' misrepresentation, deception, and promises have caused and will continue to cause plaintiffs to suffer significant mental distress.

52.

News of the problems with the Make It Right Homes has been published in the public domain and plaintiffs are unable to sell their properties. Plaintiffs have and will **continue** to suffer a diminution of value of their property as a result of the actions and inactions of defendants, all as set forth hereinabove.

53.

Plaintiffs have and will continue to suffer financial loss for necessary repairs.

### FIRST CAUSE OF ACTION

### UNFAIR TRADE PRACTICES

54.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

55.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** had a duty to act fairly with the plaintiffs herein.

56.

Pursuant to La. R.S. 51:1405, *et seq.*, The Louisiana Unfair Trade Practices Act (LUTPA), unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

57.

Defendants', websites, marketing brochures, public comments, news and other publications, and sales promises by the salesman and the President and/or general manager were all designed to lead plaintiffs herein, unsuspecting public consumers, who had already been traumatized and worn down by a devastating hurricane which destroyed their home and all of their possessions, into believing that defendants would provide plaintiffs with a well constructed,

energy efficient, sustainable home which would not be rampant with defects which have or could render their new home unlivable and/or unsaleable. Plaintiffs were misled into believing that defendants and their employees would work with them until they were satisfied with the construction and finishing of the new home. Plaintiffs were misled into believing that the warranties offered would be adhered to. Plaintiffs were misled into believing that they were purchasing a home that would withstand the local climate.

58.

Plaintiffs were further misled into believing that Make It Right would not intentionally deceive them about their warranties and/or about any defects Make It Right discovered.

59.

When Plaintiffs began to notice problems and reported the problems to Make It Right, Plaintiffs were misled into believing that Make It Right would, in fact, **make it right.**

60.

When Make it Right began inspections on homes in 2016, Plaintiffs were misled into believing that they would receive a report from the Engineers which would detail the problems with their properties and that Make It Right would, in fact, **make it right.**

61.

Plaintiffs as a group are grateful that Brad Pitt put together the Foundation to provide them with the designs, to build and sell them what they believed were affordable, energy efficient, sustainable, and safe homes. Plaintiffs, as a group, are grateful that those in need were assisted with closing costs and down payments. But plaintiffs, as a group, owe significant mortgages that they cannot escape. Plaintiffs cannot sell their homes because no purchaser wants to buy a Make It Right Home. And so, Plaintiffs are left with no other choice but to file these proceedings to **make Make It Right make it right**.

62.

Section 1409 of the Unfair Trade Practices Act creates a private cause of action under LUTPA for any person who suffers any ascertainable loss of money or movable property as a result of the use or employment by another person of an unfair or deceptive method, act or practice.

63.

Plaintiffs here have suffered ascertainable financial loss as a result of the use or

employment by defendants of unfair and deceptive methods, acts, and practices.

64.

Defendants, **THOMAS F. DARDEN,  III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER,  CRAIG TURNER,** as Directors and Officers of the Board of Directors of the defendant entities, had a duty of reasonable inquiry to insure that the homes were properly constructed and, once it became known to the Board, at least by 2013, based on their federal 990 tax form, of the defective condition of the homes; and of the significant expense required to make it right;  therefore, these defendants had a duty of reasonable inquiry to insure that the plaintiffs were properly notified of the defects and that the homes were properly repaired.

65.

The Board engaged in unfair trade practices when it chose to support management's decision not to notify the homeowners of the significant problems with their property, resulting in a loss of legal rights to the homeowners, and/or when the Board members failed to implement a plan to rectify the problem.

66.

Instead of conducting repairs openly, defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** deceptively obtained non-disclosure agreements from plaintiffs, without providing plaintiffs with full disclosure, resulting in a loss of important legal rights, even though these defendants stated awareness of their obligations to repair the properties in their 2013 federal tax form 990 filing, resulting in unfair trade practices.

67.

Upon information and belief,  the Foundation's rapid expansion into other states, without completion of the mission in New Orleans, resulted in a depletion of funds, resources, and

employee capital, which resulted in the Foundation's inability to complete the known and
necessary repairs in New Orleans.

68.

Defendants, **THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W.
WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE
COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER,** as Directors and Officers of
the Board of Directors of the defendant entities had a good faith duty and a fiduciary duty to
ensure that the funds slotted for the New Orleans properties were not redirected. These Directors
and Officers of the Board instead engaged in unfair trade practices which unfairly placed the
New Orleans homeowners at a disadvantage.

69.

Pursuant to the Louisiana Unfair Trade Practices Act, plaintiffs seek and are entitled to
actual damages, attorney's fees, treble damages, costs, an amount for mental distress and pain and
suffering repair costs, as well as the diminished value of their property (Stigma damages), as a
result of defendants' misrepresentation, deception, and unfair trade practices, in an amount to be
determined in accordance with law.

70.

Plaintiffs also seek interest from date of judicial demand until paid on all sums to which
they are entitled and any other relief to which they may be entitled. In connection therewith,
plaintiffs alternatively set forth the following causes of action:

**SECOND CAUSE OF ACTION
BREACH OF CONTRACTUAL OBLIGATIONS**

And/Or alternatively

**DETRIMENTAL RELIANCE**

71.

Under these causes of action, plaintiffs adopt any and all preceding paragraphs as if fully
restated herein.

72.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT
FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** entered into
contracts with plaintiffs for the construction, warranty, and/or repair of their homes.

23

73.

The contracts and promises of defendants were that the plaintiffs would be provided with safe, energy efficient, green homes, free from construction and material defects.

74.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** have breached their contractual obligations of warranty.

75.

Plaintiffs detrimentally relied upon the promises and agreements made by defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** and plaintiffs have and will continue to suffer damages as a result of defendants' breach of contract and promises.  Plaintiffs seek damages for breach of contract, for damages suffered as a result of their detrimental reliance on the promises and agreements made by defendants, and for any and all other relief to which they may be entitled under Louisiana law.

### THIRD CAUSE OF ACTION
### CONTINUING TORT

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

76.

Defendants were negligent in accepting the original flawed designs and defective, inappropriate and/or insufficient materials.

77.

Defendants were negligent in failing to inform the homeowners of the design defects and flaws and of the material defects and flaws.

78.

Defendants failure to effect repairs, replace defective designs and products, and failure to properly and fully apprise the homeowners of the problems constitutes a continuing tort within

the meaning of Louisiana law.

## FOURTH CAUSE OF ACTION
### FRAUD

79.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

80.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III, JAMES MAZZUTO, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** materially misrepresented material facts and/or intentionally suppressed truth in meetings with  plaintiffs, all as more fully set forth herein, including but not limited to the following misrepresentations:

1.  That their homes contained defective materials;

2.  That their homes were defectively designed;

3.  That their homes were defectively and improperly constructed;

4.  That they would provide engineering reports to the homeowners on their own properties;

5.  That they would give up important legal rights by signing documents to obtain repairs on their properties;

6.  That the Foundation was not obligated to perform the repairs, under the New Home Warranty Act, without the need for the homeowners to give up important legal rights;

81.

From 2013 to the present, defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III, JAMES MAZZUTO, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** promised repairs and further promised to produce the engineering reports, with the intent to deceive plaintiffs to forestall legal proceedings and/or for other reasons unknown to plaintiffs.  Defendants were aware that they were financially unable to perform the massive repairs necessary to bring all of plaintiffs' homes

up to the promised standard of a safe, green, healthy, and well-constructed, affordable home. The failure of these defendants to properly inform the homeowners of the engineering defects and material defects proves that these **Defendants never intended to make it right.** Defendants misrepresented and suppressed truth to obtain an unfair advantage from plaintiffs, i.e., the signing of non-disclosure documents and binding arbitration documents.

82.

Since 2013, defendants, through their representatives, have fraudulently induced plaintiffs into signing non-disclosure documents and binding arbitration agreements by withholding important information from them and by indicating that the repairs to their property could only be performed if the homeowners signed the documents in the packet.

83.

Because the homeowners were so grateful to Brad Pitt and all Make It Right representatives, a relation of confidence existed that resulted in the homeowners reasonable reliance on defendants' assertions and representations.

84.

Plaintiffs justifiably relied upon the representations made by defendants, unaware that defendants were making material and intentional misrepresentations of fact, to their resulting injury.

85.

Plaintiffs are entitled to have defendants make it right or alternatively to rescission because of the fraudulent actions of defendants identified in this cause of action.

86.

Plaintiffs are entitled to costs, attorney's fees, interest, and all legal relief resulting from defendants' fraudulent actions and omissions.

### FIFTH CAUSE OF ACTION
### NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS

87.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

88.

The conduct of the Defendants as set forth herein was reckless and wanton, constituting

the tort of negligent infliction of emotional distress, which resulted in damages to plaintiffs.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

89.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

90.

The defendants allowed putative class members and  members of their family to be exposed to mold and other toxins knowing that such exposure would cause physical injury and distress to the plaintiffs and their family.

91.

Defendants were aware that homes were defectively constructed in such a manner that would allow water intrusion which, in fact, resulted in mold.

92.

Defendants were aware that some home designs were defective in such a manner that allowed water intrusion which, in fact resulted in mold.

93.

Defendants obtained air quality studies on a number of homes which, in fact revealed dangerous mold growth, including black mold growth.

94.

The defendants' failure to abate the mold, to repair the defects which resulted in mold and to intentionally withhold information from homeowners of these problems constitutes the intentional inflection of emotional distress on each plaintiff and has proximately caused emotional distress in each of the plaintiffs and their families.

## DAMAGES

95.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will incur significant costs to repair their property.

96.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will lose the use of their property and will incur significant costs to

relocate either temporarily or permanently.

97.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will incur diminution of value, also known as stigma damages.

98.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has suffered mental distress.

99.

As a proximate result of the defendants' unfair trade practices and fraud, the plaintiffs and each class member, has or will incur significant costs and attorney's fees.

100.

Defendants are liable unto plaintiffs jointly, severally, and in solido.

101.

Petitioners are entitled to a trial by jury.

WHEREFORE, plaintiffs, individually and on behalf of the class pray that the Court certify the class herein, appointing them as class representatives and that the defendants be served with a copy of this petition and that they be cited to appear and answer same, and after due proceedings be had, including trial by jury, that judgment be rendered in their favor on behalf of all class members against the defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** individually, jointly, severally,  and in solido, for all damages, including treble damages, attorneys fees, costs, expert fees,  interest, and any other remedy allowed by law.

Respectfully submitted,

**RON AUSTIN LAW L.L.C.**

Ron A. Austin, #23630
Catherine Hilton, #27238
920 4th Street
Gretna, Louisiana 70053
Telephone:  504-227-8100
Facsimile: 504-227-8122
Email: chilton@ronaustinlaw.com
Email: raustin@ronaustinlaw.com
Attorneys for Plaintiffs, Lloyd Francis and
Jennifer DeCuir individually and on behalf of
The Putative Class

**PLEASE SERVE:**

1. **MAKE IT RIGHT-NEW ORLEANS, LLC**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

2. **MAKE IT RIGHT FOUNDATION**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

3. **MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA  70130

4. **THOMAS F. DARDEN, III**
   Address unknown

5. **JAMES MAZZUTO**
   912 Magazine Street
   New Orleans, LA  70130

6. **SAMUEL W. WHITT**
   **VIA LONG ARM STATUTE**
   4141 Parklake Drive
   Suite 200
   Raleigh, NC  27609

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

7. **S.H. "JIM" FOGLEMAN**
   <u>VIA LONG ARM STATUTE</u>
   3201Tall Tree Place
   Raleigh, NC 27607

8. **LATOYA KING**
   <u>VIA LONG ARM STATUTE</u>
   6339 Glenwood Avenue
   Raleigh, NC 27612

9. **VERONICA TAYLOR**
   Address unknown

10. **MAURICE COLEMAN**
    1649 Royal Troon Circle
    Zachary, LA 70791

11. **BRAD PITT**
    9150 Wilshire Blvd.
    Beverly Hills, CA 90212

12. **JOHN SADER**
    <u>VIA LONG ARM STATUTE</u>
    25240 Franklin Park Drive
    Franklin, MI 48025

13. **CRAIG TURNER**
    8233 Panola Street
    New Orleans, LA 70118

14. **TANYA HARRIS**
    2422 Dubreuil Street
    New Orleans, LA 70117

30

# RON AUSTIN & ASSOCIATES, L.L.C.

## ATTORNEYS AT LAW

Ron A. Austin
Jeffrey P. Green
Catherine Hilton
Jevan Fleming
John Stephens

of counsel
Ramona G. Fernandez

September 20, 2018

**VIA CERTIFIED MAIL: 7018 0680 0001 4136 1877**
Latoya King
6339 Glenwood Avenue
Raleigh, NC 27612

Re: *Francis, Lloyd, et al vs. Make It Right-New Orleans, LLC et al*
CDC Orleans Parish
No. 2018-08977 "Div. B 05"

Dear Ms. King,

Please find enclosed a certified copy of the Petition for Damages and citation filed in connection with the above referenced matter, via Certified Mail, return receipt requested. The Petition is being served upon you via the Louisiana Long Arm Statute.

Please answer within the legal delays allowed by law.

With kind regards, I remain

Very truly yours,

RON AUSTIN & ASSOCIATES, L.L.C.

Catherine Hilton

CH/jt
Enclosure

400 MANHATTAN BOULEVARD  HARVEY, LOUISIANA 70058
TELEPHONE: 504.227.8100       FACSIMILE: 504.227.8122       www.austin.associates.net

ATTORNEY'S NAME: Austin, Ron A 23630
AND ADDRESS: 920 4th Street , Gretna, LA 70053

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2018-08977     DIVISION: B     SECTION: 05

FRANCIS, LLOYD ET AL

Versus

MAKE IT RIGHT-NEW ORELANS, LLC ET AL

### CITATION - LONG ARM

TO:     LATOYA KING

THROUGH:     THE LOUISIANA LONG ARM STATUTE

6339 GLENWOOD AVENUE , RALEIGH , NC 27612

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)
days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through
the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA September 18, 2018**

Clerk's Office, Room 402, Civil Courts     CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue     The Civil District Court
New Orleans, LA     for the Parish of Orleans
    State of LA
    by
    Damian Clark, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Class Action PETITON FOR DAMAGES** | **Class Action PETITON FOR DAMAGES** |
| ON LATOYA KING | ON LATOYA KING |
| THROUGH: THE LOUISIANA LONG ARM STATUTE | THROUGH: THE LOUISIANA LONG ARM STATUTE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said LATOYA KING being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / | _____ No. _____ |
| PAPER    RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ | |
| SERIAL NO.   DEPUTY   PARISH | |

---

ID: 10017157        Page 1 of 1

ATTORNEY'S NAME:  Austin, Ron A 23630
AND ADDRESS:  920 4th Street , Gretna, LA 70053

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2018-08977          DIVISION: B          SECTION: 05

FRANCIS, LLOYD  ET AL

Versus

MAKE IT RIGHT-NEW ORELANS, LLC ET AL

CITATION - LONG ARM

TO:          LATOYA KING

THROUGH:     THE LOUISIANA LONG ARM STATUTE

             6339 GLENWOOD AVENUE , RALEIGH , NC 27612

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Class Action PETITON FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the

Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)

days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through

the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA September 18, 2018**

Clerk's Office, Room 402, Civil Courts          CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                               The Civil District Court
New Orleans, LA                                 for the Parish of Orleans
                                                State of LA
                                                by
                                                Damian Clark, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Class Action PETITON FOR DAMAGES** | **Class Action PETITON FOR DAMAGES** |
| ON  **LATOYA KING** | ON  **LATOYA KING** |
| THROUGH: **THE LOUISIANA LONG ARM STATUTE** | THROUGH: **THE LOUISIANA LONG ARM STATUTE** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and |
| Deputy Sheriff of _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **LATOYA KING**  being absent from the domicile at time of |
| Mileage: $ _____ | said service. |
| _____ / ENTERED / | Returned the same day |
| PAPER          RETURN | _____ No. _____ |
| ____/_____/____ | Deputy Sheriff of _____ |
| SERIAL NO.    DEPUTY    PARISH | |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

2018 SEP -7 ℗ 3: 31

NO.                                                   DIVISION " " ⁼

CIVIL
DISTRICT COURT

LLOYD FRANCIS and JENNIFER DECUIR
On behalf of themselves and on behalf of all others similarly situated

VERSUS

MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION
MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III,
JAMES MAZZUTO, SAMUEL W. WHITT,
S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, BRAD PITT,
MAURICE COLEMAN, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE
AND JOHN DOES 1-50

FILED:_____          _____
                                              DEPUTY CLERK

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come **petitioners, Lloyd Francis,**

and **Jennifer Decuir**, individually and on behalf of all others similarly situated, who respectfully

represent:

1.

**Lloyd Francis and Jennifer Decuir** are persons of the full age of majority, and residents

of the Parish of Orleans, and are representative of the plaintiff class in this action, who aver:

A.    Plaintiffs and Class Members are individuals who have suffered economic losses,

property losses, and non-economic losses or injuries as a result of Defendants

actions and omissions, all as more fully set forth hereinafter, within six basic

categories:  Physical Personal Injury Tort Claims; Nonphysical Tort Claims;

Property Related Claims; Financial Claims; Mental Distress Claims; and Statutory

Claims.

B.    Plaintiffs and Class Members are individuals who purchased Make It Right

Homes from **MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT**

**RIGHT FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS**

**HOUSING, LLC.** based upon representations and promises of representatives of

**MAKE IT RIGHT-NEW ORLEANS, LLC, and/or MAKE IT RIGHT**

**FOUNDATION, and/or MAKE IT RIGHT - NEW ORLEANS HOUSING,**

**LLC.** that they were purchasing quality built, green, sustainable homes designed

to withstand hurricane force winds.

2.

Made defendants herein are the following:

A.      **MAKE IT RIGHT FOUNDATION,** a foreign not for profit foundation and/or co-op, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

B.      **MAKE IT RIGHT-NEW ORLEANS, LLC,** a foreign not for profit limited liability company, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto, in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

C.      **MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** a foreign not for profit limited liability company, organized under the laws of the State of Delaware, authorized to do and doing business in the State of Louisiana, Parish of Orleans, with a registered Louisiana principal business establishment located at 912 Magazine Street, New Orleans, Louisiana 70130, which foreign foundation has appointed James Mazzuto, 912 Magazine Street, New Orleans, Louisiana 70130 as its registered agent for service of process; Said defendant foundation

designed and/or built and/or sold and/or warranted and/or repaired homes, at all times relevant hereto,  in the State of Louisiana to Louisiana citizens in the Lower Ninth Ward, New Orleans, Louisiana.

**Throughout this action, the Foundation and its subsidiaries are collectively referred to hereinafter as "the Foundation".**

D.      **THOMAS F. DARDEN,  III,** on information and belief, a person of the full age of majority and a resident of the State of North Carolina, who at all times relevant hereto, was an Officer and/or Chief Executive Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (collectively, the Foundation) from 2007 through 2014. During the relevant time period, defendant Darden held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries.  Defendant Darden also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.  At all times relevant hereto, Defendant Darden made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages.

E.      **JAMES MAZZUTO,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in the Parish of Orleans, State of Louisiana, who is Treasurer and/or Chief Operating Officer and/or Board Member of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation) from 2014 through the present, who assumed

3

the management responsibilities of former board member and CEO, Thomas
Darden.  During the relevant time period, defendant Mazzuto held a position of
authority and control over the management of the Foundation, its funds, assets,
and operations by serving as an officer and/or a member of the board, and has
owed, and continues to owe fiduciary  duties of care and loyalty to the foundation
and to its charitable beneficiaries.  Defendant Mazzutto also had a duty to act in
good faith, and in the best interest of the Foundation, including making reasonable
inquiries when other officers, directors, and/or employees made
misrepresentations, or failed to act in good faith, which he failed to do.    At all
times relevant hereto, defendant, Mazzuto made promises to investigate damages
and/or defects to the Make It Right Homes and to report to the homeowners the
findings of the investigation and to repair the damages.  At present, Defendant
Mazzuto is engaged in an attempt to defraud the residents of the Make It Right
community by again promising to repair their property but before providing
repairs, requiring the homeowners to sign a "package" without disclosing to the
residents that the "package" contains a non-disclosure agreement and a binding
arbitration agreement.

F.      **SAMUEL W. WHITT**, a person of the full age of majority who, upon
information and belief, is a resident of and domiciled in Raleigh, North Carolina,
who is a former Chairperson of **MAKE IT RIGHT FOUNDATION AND/OR**
**MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT**
**RIGHT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he
held from 2007 through 2014.  During the relevant time period, defendant Whitt
held a position of authority and control over the management of the Foundation,
its funds, assets, and operations by serving as an officer and/or a member of the
board, and has owed, and continues to owe fiduciary  duties of care and loyalty to
the foundation and to its charitable beneficiaries.  Defendant Whitt also had a duty
to act in good faith, and in the best interest of the Foundation, including making
reasonable inquiries when other officers, directors, and/or employees made
misrepresentations, or failed to act in good faith, which he failed to do.  On

information and belief, defendant, Whitt, is a licensed attorney at a current member of the North Carolina State Bar.

G.     **S.H. "JIM" FOGLEMAN,** a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Raleigh, North Carolina, who is a former Treasurer/Secretary of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation), a position he held from 2007 through 2014. During the relevant time period, defendant Fogelman held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Fogelman also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do. On information and belief, defendant, Fogelman, is a Certified Public Accountant.

H.     **LATOYA KING,** a person of the full age of majority and a resident of Raleigh, North Carolina, who is a former Vice President of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation), a position she held from 2007 through 2014. During the relevant time period, defendant King held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant King also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which she failed to do.

I.	VERONICA TAYLOR, a person of the full age of majority who, upon information and belief, who is a former Chief Operating Officer of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position she held from 2007 through 2010. During the relevant time period, defendant Taylor held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as an officer and/or a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Taylor also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which she failed to do.

J.	MAURICE COLEMAN, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Zachary, Louisiana, who is a former member of the Board of Directors of **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT - NEW ORLEANS HOUSING LLC**, (the Foundation), a position he held from 2007 through 2014. During the relevant time period, defendant Coleman held a position of authority and control over the management of the Foundation, its funds, assets, and operations by serving as a member of the board, and has owed, and continues to owe fiduciary duties of care and loyalty to the foundation and to its charitable beneficiaries. Defendant Coleman also had a duty to act in good faith, and in the best interest of the Foundation, including making reasonable inquiries when other officers, directors, and/or employees made misrepresentations, or failed to act in good faith, which he failed to do.

K.	BRAD PITT, a person of the full age of majority who, upon information and belief, is a resident of and domiciled in Beverly Hills, California who is a member of the Board of Directors of **MAKE IT RIGHT FOUNDATION**

6

AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR

MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, (the Foundation), a

position he held since 2007.  During the relevant time period, defendant Pitt held

a position of authority and control over the management of the Foundation, its

funds, assets, and operations by serving as a member of the board, and has owed,

and continues to owe fiduciary duties of care and loyalty to the foundation and to

its charitable beneficiaries.  Defendant Pitt also had a duty to act in good faith,

and in the best interest of the Foundation, including making reasonable inquiries

when other officers, directors, and/or employees made misrepresentations, or

failed to act in good faith, which he failed to do.

L.      **JOHN SADER,** a person of the full age of majority who, upon information and

belief, is a resident of and domiciled in New Orleans, Louisiana who is a  former

member of the Board of Directors and Director of Construction of **MAKE IT**

**RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS,**

**LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING**

**LLC,** (the Foundation), a position he held in 2010 when the majority of the Make

It Right homes were being constructed in New Orleans.  In addition to being a

Member of the Board of Directors, as  the Director of Construction defendant

Sader oversaw the construction of the Make It Right homes in New Orleans.

During the relevant time period, defendant Sader held a position of authority and

control over the management of the Foundation, its funds, assets, and operations

by serving as a member of the board, and has owed, and continues to owe

fiduciary duties of care and loyalty to the foundation and to its charitable

beneficiaries.  Defendant Sader also had a duty to act in good faith, and in the best

interest of the Foundation, including making reasonable inquiries when other

officers, directors, and/or employees made misrepresentations, or failed to act in

good faith, which he failed to do.

M.      **CRAIG TURNER,** a person of the full age of majority who, upon information

and belief, is a resident of and domiciled in New Orleans, Louisiana who is a

former member of the Board of Directors of **MAKE IT RIGHT**

7

FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC,

AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,

(the Foundation), a position he held from 2011 through 2014, when the majority

of the Make It Right homes were being constructed in New Orleans.  In addition

to being a Member of the Board of Directors, defendant Turner was the Director

of Construction and oversaw the construction of the Make It Right homes in New

Orleans.  During the relevant time period, defendant Turner held a position of

authority and control over the management of the Foundation, its funds, assets,

and operations by serving as a member of the board, and has owed, and continues

to owe fiduciary duties of care and loyalty to the foundation and to its charitable

beneficiaries.  Defendant Turner also had a duty to act in good faith, and in the

best interest of the Foundation, including making reasonable inquiries when other

officers, directors, and/or employees made misrepresentations, or failed to act in

good faith, which he failed to do.

N.       **TANYA HARRIS,** who, upon information and belief is a person of the full age

of majority who, upon information and belief, is a resident of and domiciled in

New Orleans, Louisiana who at all relevant times herein was and is an employee

of  **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW**

**ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS**

**HOUSING LLC,** (the Foundation).  At all times relevant hereto, defendant,

Harris made promises to investigate damages and/or defects to the Make It Right

Homes and to report to the homeowners the findings of the investigation and to

repair the damages.  At present, Defendant Harris is engaged in an attempt to

defraud the residents of the Make It Right community by again promising to

repair their property but before providing repairs, requiring the homeowners to

sign a "package" without disclosing to the residents that the "package" contains a

non-disclosure agreement and a binding arbitration agreement.

O.       **DOES 1-50**  are the fictitious names of key employees, contractors, architects,

officers, and directors  and/or insurers of same, during the time set forth in the

complaint, and those who have acted on behalf of or as agent, servant, or

employee of one or more of the named defendants, or who have participated or acted in concert with one or more of the named defendants, but whose true names and capacities, or acts or inactions, whether individual, corporate, or otherwise, are presently unknown to plaintiff. Upon information and belief, the named defendants and Does 1-50 have directly and/or indirectly participated in and are responsible for the acts and omissions, and fraud, which are more specifically described herein. Because plaintiffs are presently uninformed as to the true names and capacities of Does 1-50, plaintiffs sue them by fictitious names but will seek leave to substitute their names when their true names are discovered.

3.

The allegations at issue in this action took place in New Orleans, Louisiana and venue is proper in Orleans Parish, Louisiana.

## CLASS ACTION ALLEGATIONS

4.

Plaintiffs seek to represent the following class of individuals: *All persons who have purchased a home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Lousiana from August 15, 2007 to the present, and/or who subsequently purchased a home from an original purchase of a Make It Right home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Louisiana from August 15, 2007 to the present.*

5.

Excluded from the class are the defendants, and their officers, directors, and employees.

6.

The putative class meets the prerequisites required under Louisiana Law for certification as a class action because, among other reasons:

a. The putative class members are so numerous that joinder of all members is impracticable.

b. There are questions of law or fact common to the class.

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

9

d.  The representative parties will fairly and adequately protect the interests of the class.

e.  The class has been defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

f.  The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class

## PRELIMINARY ALLEGATIONS

7.

Make it Right Foundation was incorporated on August 15, 2007, as a Delaware not-for-profit corporation.  The stated primary objective of the Foundation was to "improve the design and performance of **affordable housing**."  The Foundation's primary goal is "to provide high-quality, energy-efficient housing to families in need, and to improve the development of communities in which they live." "The organization's first project was to assist in the sustainable redevelopment of New Orleans, in particular, the Lower 9th Ward."  The initial stated mission for this project was "to be a catalyst for redevelopment by building a neighborhood comprised of safe and health homes, inspired by Cradle to Cradle thinking, with an emphasis on high quality of design, while preserving the spirit of the community's culture."  (See below tax filing:

8.

The Foundation was begun by actor, Brad Pitt to help bring back the Lower Ninth Ward.

9.

The Foundation's stated intent to achieve its purposes was to build **"sustainable architecture"** that "meet Leed Platinum Requirements."

10.

The homeowners who lost everything in Hurricane Katrina were and are extremely grateful to Mr. Pitt for spearheading the rebuilding of the Lower Ninth Ward because their neighborhood housed more than their homes. It housed their *community*.

11.

In 2008, to further its goal, the Foundation set up two single member LLC subsidiaries: Make It Right – New Orleans, LLC and Make It Right – New Orleans Housing, LLC.

12.

On November 4, 2009, the Foundation set up a for-profit subsidiary, Make It Right-Solar, Inc. MIR Solar is in the business of leasing solar panels and related equipment and servicing of such equipment to Make It Right homeowners "as well other homes in New Orleans, as noted in the Foundation's tax filing below:

| Schedule O (Form 990) 2009 | | Page 2 |
|---|---|---|
| Name of the organization<br>MAKE IT RIGHT FOUNDATION | | Employer identification number<br>26-0723027 |
| 15)   CREATED A SUB-ENTITY (OWNED BY THE MAKE IT RIGHT FOUNDATION) TO MANAGE THE REMAINING SOLAR PHOTOVOLTAIC INSTALLATIONS ON MAKE IT RIGHT HOMES AS WELL AS OTHER HOMES IN NEW ORLEANS. | | |

**Through this for-profit subsidiary, Make It Right's subsidiary owns all of the solar panels placed on the property and leases same to the homeowners, thereby retaining the right to all federal and/or state tax credits.**

13.

The Foundation represented that they partnered with a consortium of nonprofits to submit applications for federal grants, including HUD's Neighborhood Stabilization Program II. The Foundation's primary purpose is to build affordable green homes; however, on a limited and as needed basis, the Foundation sometimes provided homeowner assistance funds, closing costs

11

assistance and forgivable loans to homeowners participating in the program. These loans were referred to as "soft second mortgages". Homeowner assistance funds are also supposed to be provided to Make it Right Homeowners for repairs on their homes. The closing costs assistance program helps homeowners pay closing transaction costs associated with the purchase of their home. The forgivable loans assist families with covering the funding gap between the sales price of their home and their mortgage.

14.

**No Make It Right homeowner received their home for free. The Make It Right homeowners are obligated under conventional mortgages to pay for their home. At most, some homeowners received second soft mortgages from Make It Right, or first time homebuyer grants from the City of New Orleans.**

15.

The Foundation provided the "designs" free to the homeowners. The housing construction was to be *affordable*. The houses were **never free**. The Make It Right homeowners are obligated to pay monthly mortgages for their properties most of which are on a 30 year term.

16.

The Foundation represented in tax filings that it has a strong management team with experience in operations, accounting, and finance and that it formed an advisory Board that included six members who had significant experience in real estate development and finance, operations, architecture and entrepreneurism.

17.

The Foundation also represented that its Treasurer/Secretary is a Certified Public Accountant who is the chief financial officer of a real estate investment firm where he oversees investment level financial reporting and compliance matters. The Foundation represented its Chief Operating Officer was experienced in operations, finance, and real estate. The Foundation assured that "together, with the Board of Directors and Advisory Board, the Management Team is able to manage Make it Right effectively."

Schedule D (Form 990) 2005                                                                                    Page 2

Name of the organization                                                    Employer Identification number
MAKE IT RIGHT FOUNDATION                                                    26-0722027

THE ADVISORY BOARD HAS SIGNIFICANT EXPERIENCE IN REAL ESTATE DEVELOPMENT
AND FINANCE, OPERATIONS, ARCHITECTURE AND ENTREPRENEURISM. MAKE IT RIGHT
HAS A STRONG MANAGEMENT TEAM WITH EXPERIENCE IN OPERATIONS, ACCOUNTING
AND FINANCE.  THE TREASURER/SECRETARY IS THE CHIEF FINANCIAL OFFICER OF A
REAL ESTATE INVESTMENT FIRM WHERE HE OVERSEES INVESTMENT LEVEL FINANCIAL
REPORTING AND COMPLIANCE MATTERS. HE IS A CERTIFIED PUBLIC ACCOUNTANT.
THE CHIEF OPERATING OFFICER HAS EXPERIENCE IN OPERATIONS, FINANCE AND
REAL ESTATE.  TOGETHER, WITH THE BOARD OF THE DIRECTORS AND ADVISORY
BOARD, THE MANAGEMENT TEAM IS ABLE TO MANAGE MAKE IT RIGHT EFFECTIVELY.

18.

The original plan was for the Foundation to build 150 energy efficient, safe, sustainable
homes in the Lower Ninth Ward in New Orleans, Louisiana.

19.

In 2010, the Foundation began operations to develop affordable, sustainable housing in
New Jersey, in addition to its development in Louisiana.

20.

In 2010, even though the original goal to build 150 safe, affordable, green housing was
not complete in New Orleans, the Foundation was awarded two NSP grants through the Housing
and Urban Development Neighborhood Stabilization Program to provide 4.9 Million in funds to
allow the Foundation to continue to build homes in the lower Ninth Ward and Newark.

21.

By the end of 2011, the Foundation built 73 of the intended 105 houses in New Orleans,
Louisiana.

22.

In 2011, the Foundation began an "ambitious new project" in a transitional urban
community in Kansas City to provide affordable housing for 150 residents.

23.

In 2012, the Foundation completed a 56 unit multi-family building for disabled veterans
in Newark, New Jersey.

24.

During 2012, the Foundation set up an additional single member not-for-profit subsidiary

13

to assist in the development and operation of apartments in Kansas City, Missouri.  In 2012, the Foundation continued with the urban community project in Kansas City.

25.

In 2013, the Foundation expanded its developments of low cost, sustainable homes to Fort Peck, Montana.

26.

In the 2013 federal Form 990 tax filing, the Foundation  identified issues related to building materials used in the construction of completed homes and also identified issues related to the design of certain homes that required significant repair costs; however, despite this knowledge, the Foundation never provided homeowners with notice of these design and material defects and therefore fraudulently deprived  homeowners of their right to pursue legal actions under Louisiana's New Home Warranty Act, codified at R.S. 9:3141 *et seq*.  The Foundation recognized in tax filings, excerpted below, that its warranty liability was in excess of 4 Million, but the Foundation never provided homeowners with notice of the extent of problems that the Foundation discovered.

Make It Right Foundation and Subsidiaries

Warranty and Repair Liability

During 2013, the Foundation identified issues related to certain materials used in the construction of the completed homes and certain designs of homes that required significant repair costs.  As such, the Foundation recognized a warranty and repair liability in the accompanying consolidated statement of financial position of $2,968,714 and $1,505,990 as of December 31, 2014 and 2013, respectively, for the estimated construction repair costs to be incurred in subsequent periods.  The Foundation recognized approximately $2,500,000 and $1,800,000 of repair and warranty expense during the years ended December 31, 2014 and 2013, respectively.  These expenses are classified as Program Expense in the accompanying consolidated statement of activities and changes in net assets.

27.

On February 13, 2015, the Foundation entered into a contractor agreement whereby the Foundation is the general contractor for the construction of single-family units, a sports court and a warming house in Poplar, Montana, within the boundaries of the Fort Peck Indian Reservation.

28.

During late 2016, 2017 and early 2018, Make It Right Foundation arranged for a number of the Make It Right Homes in the Lower Ninth Ward to be inspected by engineers, allegedly brought in specifically to render a report on the state of the Make It Right homes.

29.

Upon information and belief, the Engineering firm which conducted the inspections was

14

Simpson Gumpertz & Heger, a national engineering firm that designs, investigates, and rehabilitates structures and materials. Engineers from the Boston and Houston offices conducted inspections.

30.

Homeowners repeatedly requested the engineering reports, but were either advised that they reports were not yet ready or their requests were repeatedly ignored.

31.

Because the homeowners continued to believe in Mr. Brad Pitt and the Make It Right Foundation, the homeowners detrimentally relied upon the false promises that they would receive the engineering report for their respective homes.

32.

Based upon information and belief, the engineers discovered many issues across the homes, but despite repeated promises from multiple members of the putative class, the Foundation continued to fail to provide homeowners with reports, or other notice of the extent of problems that the Foundation discovered, even though the Foundation, who has in-house legal counsel, was aware or should have been aware that the time limit for most homeowners to proceed under the New Home Warranty Act, La. R.S. 9:3141 *et seq* would be lost if the homeowners continued to patiently await the reports.

33.

Upon information and belief, this past week, **defendants, Mazzuto and Harris** have again made promises that they will produce the engineering report, when it is received, but that the homeowner needs to sign a "packet" to begin the repairs. The packet contains a non-disclosure document and a binding arbitration document. The defendants do not explain to the homeowners what those documents are. Instead, the defendants attempt to **fraudulently** obtain signatures on agreements that would deprive homeowners of important legal rights, while the homeowners are under duress

34.

Homeowners began to be aware of problems with their home as early as 2013, 2014, but detrimentally relied upon the continuing promises of the Foundation and its agents and employees that the Foundation intended to repair the problems. The homeowners justifiably

relied upon these promises because the Foundation did make arrangements for inspections by engineers.

35.

Upon information and belief, defendants, **James Mazzuto and Tanya Harris** were involved in the scheduling of these engineering inspections; were involved in communicating with the Make It Right homeowners that inspections were taking place; and further promised to provide the Make It Right homeowners with a report of their home's inspections.

36.

Upon information and belief, the attempt to fraudulently mislead homeowners into signing non-disclosure agreements and binding arbitration agreements was developed after publicity of Make It Right's failures and the deteriorating condition of the homes was recently published on the Internet.

37.

By written notice dated September 7, 2018, counsel for the putative class has demanded that Make It Right produce copies of all non-disclosure agreements and binding arbitration agreements wrongfully obtained by them under duress.

38.

To date, despite months and/or years of multiple requests, the defendants have failed to "make it right" and/or refused to produce the engineering reports.

39.

Upon information and belief, Make It Right has re-purchased some of homes that could not be properly repaired.

40.

Upon information and belief, Make It Right continues to own a number of undeveloped lots.

41.

Upon information and belief, Make It Right has failed to pay property taxes due to the City of New Orleans on many of the properties it owns, and is therefore delinquent.

42.

The Foundation has not filed the required federal tax returns for the years 2016 or 2017,

16

according to its website, and thus, the financial status of the Foundation cannot be ascertained after December 31, 2015.

43.

The Foundation has stopped construction of new homes in the Lower Ninth Ward, despite having constructed only a total of 109 Make It Right Homes in the neighborhood. The Foundation has virtually ceased all repair activity on the 109 Make It Right Homes, with the exception of a few properties some of which appear to be under repair, without the appropriate City building permits.

44.

Lloyd Francis and Jennifer DeCuir, individually, and as representatives of the putative class, are concerned that the defendant, Foundation and its related entities are not financially solvent. This fear has caused the class representatives and the putative class **severe mental distress** because the homeowners owe mortgages on their property and will continue to owe mortgages on their properties for 20 or more years and the homeowners are gravely concerned that their homes, which suffer serious structural problems, will not last as long as their mortgages.

45.

Defendants, **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC** (the Foundation) held themselves out to the general public, specifically, the general public in the State of Louisiana, as hiring and training local general contractors, workers, and laborers in green building practices, with **MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** (the Foundation) serving as the site superintendent, ordering all materials, scheduling timelines, ensuring quality control, and handling homeowner maintenance.

46.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** held themselves out to the general public as the purchaser of quality materials. The continued failure to replace and repair defective products, despite promises to the contrary is a continuing

17

tort within the meaning of Louisiana law.

47.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,** represent to the general public and purchasers like plaintiffs herein, that it ensures our homeowners live in sustainable, innovative homes, energy efficient, green, high-quality and healthy homes. See, for example, their website, excerpted below. The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.



48.

That Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC,**

promised homeowners they would receive a quality built, energy efficient, sustainable home; that would withstand the ravages of time and severe weather. The continued disrepair of the properties, despite promises to the contrary is a continuing tort within the meaning of Louisiana law.

49.

Based on false representations, false assurances, and false promises made by **DEFENDANTS, MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III**, and **JAMES MAZZUTO**, and as reinforced from the false representations, assurances and promises contained in the websites set forth hereinabove and in the printed literature provided to plaintiffs at their various meetings with the defendants, plaintiffs were induced to sign building contracts with defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC.**

50.

Plaintiffs' homes, designed, constructed, built, and/or sold by defendants herein were deficiently constructed and built, and/or used such defective products which caused a multitude of damages, including but not limited to:

a.    Trapped water and moisture resulting from the construction defects has resulted in the growth of mold and other bacteria and has resulted in delamination of building materials.

b.    Failure to properly vent properties has caused air quality problems;

c.    Structural problems

d.    Electrical problems, including but not limited to faulty wiring, causing fire.

e.    Plumbing problems

f.    Rotten wood;

g.    Use of improper building supplies has caused porches rot;

h.    Use of improper building techniques has caused stair railings to fail.

i.    Any and all other defects to be discovered.

j.    HVAC problems.

19

51.

The defendants' misrepresentation, deception, and promises have caused and will continue to cause plaintiffs to suffer significant mental distress.

52.

News of the problems with the Make It Right Homes has been published in the public domain and plaintiffs are unable to sell their properties. Plaintiffs have and will **continue** to suffer a diminution of value of their property as a result of the actions and inactions of defendants, all as set forth hereinabove.

53.

Plaintiffs have and will continue to suffer financial loss for necessary repairs.

**FIRST CAUSE OF ACTION**

**UNFAIR TRADE PRACTICES**

54.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

55.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** had a duty to act fairly with the plaintiffs herein.

56.

Pursuant to La. R.S. 51:1405, *et seq.*, The Louisiana Unfair Trade Practices Act (LUTPA), unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

57.

Defendants', websites, marketing brochures, public comments, news and other publications, and sales promises by the salesman and the President and/or general manager were all designed to lead plaintiffs herein, unsuspecting public consumers, who had already been traumatized and worn down by a devastating hurricane which destroyed their home and all of their possessions, into believing that defendants would provide plaintiffs with a well constructed,

20

energy efficient, sustainable home which would not be rampant with defects which have or could render their new home unlivable and/or unsaleable. Plaintiffs were misled into believing that defendants and their employees would work with them until they were satisfied with the construction and finishing of the new home. Plaintiffs were misled into believing that the warranties offered would be adhered to. Plaintiffs were misled into believing that they were purchasing a home that would withstand the local climate.

58.

Plaintiffs were further misled into believing that Make It Right would not intentionally deceive them about their warranties and/or about any defects Make It Right discovered.

59.

When Plaintiffs began to notice problems and reported the problems to Make It Right, Plaintiffs were misled into believing that Make It Right would, in fact, **make it right.**

60.

When Make it Right began inspections on homes in 2016, Plaintiffs were misled into believing that they would receive a report from the Engineers which would detail the problems with their properties and that Make It Right would, in fact, **make it right.**

61.

Plaintiffs as a group are grateful that Brad Pitt put together the Foundation to provide them with the designs, to build and sell them what they believed were affordable, energy efficient, sustainable, and safe homes. Plaintiffs, as a group, are grateful that those in need were assisted with closing costs and down payments. But plaintiffs, as a group, owe significant mortgages that they cannot escape. Plaintiffs cannot sell their homes because no purchaser wants to buy a Make It Right Home. And so, Plaintiffs are left with no other choice but to file these proceedings to **make Make It Right make it right.**

62.

Section 1409 of the Unfair Trade Practices Act creates a private cause of action under LUTPA for any person who suffers any ascertainable loss of money or movable property as a result of the use or employment by another person of an unfair or deceptive method, act or practice.

63.

Plaintiffs here have suffered ascertainable financial loss as a result of the use or

21

employment by defendants of unfair and deceptive methods, acts, and practices.

64.

Defendants, **THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER,** as Directors and Officers of the Board of Directors of the defendant entities, had a duty of reasonable inquiry to insure that the homes were properly constructed and, once it became known to the Board, at least by 2013, based on their federal 990 tax form, of the defective condition of the homes; and of the significant expense required to make it right; therefore, these defendants had a duty of reasonable inquiry to insure that the plaintiffs were properly notified of the defects and that the homes were properly repaired.

65.

The Board engaged in unfair trade practices when it chose to support management's decision not to notify the homeowners of the significant problems with their property, resulting in a loss of legal rights to the homeowners, and/or when the Board members failed to implement a plan to rectify the problem.

66.

Instead of conducting repairs openly, defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** deceptively obtained non-disclosure agreements from plaintiffs, without providing plaintiffs with full disclosure, resulting in a loss of important legal rights, even though these defendants stated awareness of their obligations to repair the properties in their 2013 federal tax form 990 filing, resulting in unfair trade practices.

67.

Upon information and belief, the Foundation's rapid expansion into other states, without completion of the mission in New Orleans, resulted in a depletion of funds, resources, and

employee capital, which resulted in the Foundation's inability to complete the known and necessary repairs in New Orleans.

68.

Defendants, **THOMAS F. DARDEN, III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER, CRAIG TURNER,** as Directors and Officers of the Board of Directors of the defendant entities had a good faith duty and a fiduciary duty to ensure that the funds sloted for the New Orleans properties were not redirected. These Directors and Officers of the Board instead engaged in unfair trade practices which unfairly placed the New Orleans homeowners at a disadvantage.

69.

Pursuant to the Louisiana Unfair Trade Practices Act, plaintiffs seek and are entitled to actual damages, attorney's fees, treble damages, costs, an amount for mental distress and pain and suffering repair costs, as well as the diminished value of their property (Stigma damages), as a result of defendants' misrepresentation, deception, and unfair trade practices, in an amount to be determined in accordance with law.

70.

Plaintiffs also seek interest from date of judicial demand until paid on all sums to which they are entitled and any other relief to which they may be entitled. In connection therewith, plaintiffs alternatively set forth the following causes of action:

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACTUAL OBLIGATIONS

#### And/Or alternatively

### DETRIMENTAL RELIANCE

71.

Under these causes of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

72.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** entered into contracts with plaintiffs for the construction, warranty, and/or repair of their homes.

73.

The contracts and promises of defendants were that the plaintiffs would be provided with safe, energy efficient, green homes, free from construction and material defects.

74.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION, and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.,** have breached their contractual obligations of warranty.

75.

Plaintiffs detrimentally relied upon the promises and agreements made by defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, AND/OR MAKE IT RIGHT FOUNDATION AND/OR MAKE IT RIGHT - NEW ORLEANS HOUSING LLC, THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** and plaintiffs have and will continue to suffer damages as a result of defendants' breach of contract and promises.  Plaintiffs seek damages for breach of contract, for damages suffered as a result of their detrimental reliance on the promises and agreements made by defendants, and for any and all other relief to which they may be entitled under Louisiana law.

### THIRD CAUSE OF ACTION
### CONTINUING TORT

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

76.

Defendants were negligent in accepting the original flawed designs and defective, inappropriate and/or insufficient materials.

77.

Defendants were negligent in failing to inform the homeowners of the design defects and flaws and of the material defects and flaws.

78.

Defendants failure to effect repairs, replace defective designs and products, and failure to properly and fully apprise the homeowners of the problems constitutes a continuing tort within

24

the meaning of Louisiana law.

## FOURTH CAUSE OF ACTION
### FRAUD

79.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

80.

Defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** materially misrepresented material facts and/or intentionally suppressed truth in meetings with plaintiffs, all as more fully set forth herein, including but not limited to the following misrepresentations:

1.   That their homes contained defective materials;

2.   That their homes were defectively designed;

3.   That their homes were defectively and improperly constructed;

4.   That they would provide engineering reports to the homeowners on their own properties;

5.   That they would give up important legal rights by signing documents to obtain repairs on their properties;

6.   That the Foundation was not obligated to perform the repairs, under the New Home Warranty Act, without the need for the homeowners to give up important legal rights;

81.

From 2013 to the present, defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC, MAKE IT RIGHT FOUNDATION and MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN, III, JAMES MAZZUTO, JOHN SADER, CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** promised repairs and further promised to produce the engineering reports, with the intent to deceive plaintiffs to forestall legal proceedings and/or for other reasons unknown to plaintiffs. Defendants were aware that they were financially unable to perform the massive repairs necessary to bring all of plaintiffs' homes

up to the promised standard of a safe, green, healthy, and well-constructed, affordable home. The failure of these defendants to properly inform the homeowners of the engineering defects and material defects proves that these **Defendants never intended to make it right.** Defendants misrepresented and suppressed truth to obtain an unfair advantage from plaintiffs, i.e., the signing of non-disclosure documents and binding arbitration documents.

82.

Since 2013, defendants, through their representatives, have fraudulently induced plaintiffs into signing non-disclosure documents and binding arbitration agreements by withholding important information from them and by indicating that the repairs to their property could only be performed if the homeowners signed the documents in the packet.

83.

Because the homeowners were so grateful to Brad Pitt and all Make It Right representatives, a relation of confidence existed that resulted in the homeowners reasonable reliance on defendants' assertions and representations.

84.

Plaintiffs justifiably relied upon the representations made by defendants, unaware that defendants were making material and intentional misrepresentations of fact, to their resulting injury.

85.

Plaintiffs are entitled to have defendants make it right or alternatively to rescission because of the fraudulent actions of defendants identified in this cause of action.

86.

Plaintiffs are entitled to costs, attorney's fees, interest, and all legal relief resulting from defendants' fraudulent actions and omissions.

## FIFTH CAUSE OF ACTION
## NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS

87.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

88.

The conduct of the Defendants as set forth herein was reckless and wanton, constituting

the tort of negligent infliction of emotional distress, which resulted in damages to plaintiffs.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

89.

Under this cause of action, plaintiffs adopt any and all preceding paragraphs as if fully restated herein.

90.

The defendants allowed putative class members and members of their family to be exposed to mold and other toxins knowing that such exposure would cause physical injury and distress to the plaintiffs and their family.

91.

Defendants were aware that homes were defectively constructed in such a manner that would allow water intrusion which, in fact, resulted in mold.

92.

Defendants were aware that some home designs were defective in such a manner that allowed water intrusion which, in fact resulted in mold.

93.

Defendants obtained air quality studies on a number of homes which, in fact revealed dangerous mold growth, including black mold growth.

94.

The defendants' failure to abate the mold, to repair the defects which resulted in mold and to intentionally withhold information from homeowners of these problems constitutes the intentional inflection of emotional distress on each plaintiff and has proximately caused emotional distress in each of the plaintiffs and their families.

## DAMAGES

95.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will incur significant costs to repair their property.

96.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will lose the use of their property and will incur significant costs to

relocate either temporarily or permanently.

97.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has or will incur diminution of value, also known as stigma damages.

98.

As a proximate result of the defendants' actions, inactions, and conduct, the plaintiffs and each class member, has suffered mental distress.

99.

As a proximate result of the defendants' unfair trade practices and fraud, the plaintiffs and each class member, has or will incur significant costs and attorney's fees.

100.

Defendants are liable unto plaintiffs jointly, severally, and in solido.

101.

Petitioners are entitled to a trial by jury.

WHEREFORE, plaintiffs, individually and on behalf of the class pray that the Court certify the class herein, appointing them as class representatives and that the defendants be served with a copy of this petition and that they be cited to appear and answer same, and after due proceedings be had, including trial by jury, that judgment be rendered in their favor on behalf of all class members against the defendants, **MAKE IT RIGHT-NEW ORLEANS, LLC; MAKE IT RIGHT FOUNDATION, MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC., THOMAS F. DARDEN,  III, JAMES MAZZUTO, SAMUEL W. WHITT, S.H. "JIM" FOGLEMAN, LATOYA KING, VERONICA TAYLOR, MAURICE COLEMAN, BRAD PITT, JOHN SADER,  CRAIG TURNER, TANYA HARRIS, JANE AND JOHN DOES 1-50** individually, jointly, severally,  and in solido, for all damages, including treble damages, attorneys fees, costs, expert fees,  interest, and any other remedy allowed by law.

Respectfully submitted,

**RON AUSTIN LAW L.L.C.**

Ron A. Austin, #23630
Catherine Hilton, #27238
920 4th Street
Gretna, Louisiana 70053
Telephone: 504-227-8100
Facsimile: 504-227-8122
Email: chilton@ronaustinlaw.com
Email: raustin@ronaustinlaw.com
Attorneys for Plaintiffs, Lloyd Francis and
Jennifer DeCuir individually and on behalf of
The Putative Class

**PLEASE SERVE:**

1. **MAKE IT RIGHT-NEW ORLEANS, LLC**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA 70130

2. **MAKE IT RIGHT FOUNDATION**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA 70130

3. **MAKE IT RIGHT - NEW ORLEANS HOUSING, LLC.**
   Through its agent for service of process
   James Mazzuto
   912 Magazine Street
   New Orleans, LA 70130

4. **THOMAS F. DARDEN, III**
   Address unknown

5. **JAMES MAZZUTO**
   912 Magazine Street
   New Orleans, LA 70130

6. **SAMUEL W. WHITT**
   **VIA LONG ARM STATUTE**
   4141 Parklake Drive
   Suite 200
   Raleigh, NC 27609

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

29

7. **S.H. "JIM" FOGLEMAN**
   **VIA LONG ARM STATUTE**
   3201 Tall Tree Place
   Raleigh, NC 27607

8. **LATOYA KING**
   **VIA LONG ARM STATUTE**
   6339 Glenwood Avenue
   Raleigh, NC 27612

9. **VERONICA TAYLOR**
   Address unknown

10. **MAURICE COLEMAN**
    1649 Royal Troon Circle
    Zachary, LA 70791

11. **BRAD PITT**
    9150 Wilshire Blvd.
    Beverly Hills, CA 90212

12. **JOHN SADER**
    **VIA LONG ARM STATUTE**
    25240 Franklin Park Drive
    Franklin, MI 48025

13. **CRAIG TURNER**
    8233 Panola Street
    New Orleans, LA 70118

14. **TANYA HARRIS**
    2422 Dubreuil Street
    New Orleans, LA 70117

30

UNITED STATES POSTAGE
$ 006.70⁰
PITNEY BOWES
02 4P
0004728851  SEP 20 2018
MAILED FROM ZIP CODE 70053

CERTIFIED MAIL

7016 0640 0001 4136 1877

**Ron Austin Law, LLC**
400 Manhattan Boulevard  Harvey, Louisiana 70058

VIA CERTIFIED MAIL: 7018 0680 0001 4136 1877

Latoya King
6339 Glenwood Avenue
Raleigh, NC 27612