UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRANCIS ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9906** |
| **MAKE IT RIGHT-NEW ORLEANS, LLC ET AL.** | **SECTION "L" (4)** |

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand (R. Doc. 15). Having considered the briefs, the applicable law, and having heard the parties on oral argument, the Court now issues this Order and Reasons.

### I. BACKGROUND

The Make It Right Foundation ("MIR Foundation") was formed in the aftermath of Hurricane Katrina with the initial goal of building affordable and sustainable houses in the Lower 9th Ward neighborhood of New Orleans. Plaintiffs Lloyd Francis and Jennifer Decuir, purporting to represent a class of all original and subsequent purchasers of the Lower 9th Ward MIR Foundation homes, contend the houses are defective. They sued the MIR Foundation, two of its single-member subsidiaries, and several of its current and former officers, directors, and employees in the Civil District Court for the Parish of Orleans.

Defendants Samuel W. Whitt, S.H. "Jim" Fogelman, and LaToya King (the "Removing Defendants"), former officers and directors of the MIR Foundation, removed this action under the Class Action Fairness Act ("CAFA"). Plaintiffs now move to remand, arguing that (1) the Removing Defendants have not established that CAFA's amount in controversy is met, or (2) this action should be remanded under one of CAFA's "exceptions."

1

## II. LAW AND ANALYSIS

CAFA was enacted to expand federal jurisdiction over interstate class actions of national interest. It provides federal courts with subject matter jurisdiction over class actions in which the parties are minimally diverse (i.e, at least one member of a plaintiff class is a citizen of a state different from at least one defendant) and the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d). A district court may decline to exercise jurisdiction, however, under three narrow exceptions: (1) the local controversy exception; (2) the home state exception; and (3) discretionary jurisdiction.

*I.*

Plaintiffs first argue that the Removing Defendants have not made a sufficient showing that the amount in controversy is met.

The Removing Defendants must prove by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Robertson v. Exxon Mobil Corp.,* 814 F.3d 236, 240 (5th Cir. 2015). They can meet this burden by (1) showing that the amount is "facially apparent" from the pleadings, or (2) submitting summary-judgment-type evidence. *Id.* "[T]hat the removing party bears the burden of proving the amount in controversy does not mean that the removing party cannot ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Id*.

It is facially apparent from Plaintiffs' Complaint that this case meets the $5 million threshold. Plaintiffs bring causes of action for violations of the Louisiana Unfair Trade Practices Act, breach of contract, continuing tort, fraud, and negligent and intentional infliction of emotional distress. They seek damages on behalf of the putative class of all original and subsequent

purchasers of the Lower 9th Ward homes for the cost of "massive repairs"[1] and the "significant mental distress" the purchasers have experienced. Finally, the Complaint cites a 2013 MIR Foundation tax filing that allegedly recognized a warranty liability in excess of $4 million associated with the homes,[2] and indicates that little of the repairs included in this estimate have been completed.[3]

*II.*

Plaintiffs next argue that this action should be remanded under one of CAFA's three exceptions. "[T]he language, structure, and history of CAFA all demonstrate that Congress contemplated broad federal court jurisdiction with only narrow exceptions," *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 429 (5th Cir. 2014), that "provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects

---

[1] Plaintiffs allege:
> Plaintiffs' homes, designed, constructed, built, and/or sold by defendants herein were deficiently constructed and built, and/or used such defective products which caused a multitude of damages, including but not limited to:
>     a. Trapped water and moisture resulting from the construction defects has resulted in the growth of mold and other bacteria and resulted in delamination of building materials
>     b. Failure to properly vent properties has caused air quality problems
>     c. Structural problems
>     d. Electrical problems, including but not limited to faulty wiring, causing fire
>     e. Plumbing problems
>     f. Rotten wood
>     g. Use of improper building supplies has caused porches rot [sic]
>     h. Use of improper building techniques has caused stair railings to fail
>     i. Any and all defects to be discovered
>     j. HVAC problems
> R. Doc. 1-1 at 19.

[2] The Complaint reads:
> In the 2013 federal Form 990 tax filing, the Foundation identified issues related to building materials used in the construction of completed homes and also identified issues related to the design of certain homes that required significant repair costs; however, despite this knowledge, the Foundation never provided homeowners with notice of these design and material defects and therefore fraudulently deprived homeowners of their right to pursue legal actions under Louisiana's New Home Warranty Act, codified at R.S. 9:3141 *et seq*. The Foundation recognized in tax filings, excepted below, that its warranty liability was in excess of 4 million, but the Foundation never provided homeowners with notice of the extent of problems that the Foundation discovered.

[3] Plaintiffs allege that the MIR Foundation has "virtually ceased all repair activity … with the exception of a few properties," and refer to the MIR Foundation's "continued failure to replace and repair defective products" and the "continued disrepair of the properties." R. Doc. 1-1 at 17, 20.

a particular locality to the exclusion of all others." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 546, 570 (5th Cir. 2011). Plaintiffs bear the burden of proving to a reasonable certainty that the exceptions apply. *Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 (5th Cir. 2016).

Under the local controversy exception, the district court "shall decline to exercise jurisdiction" over an action in which:

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant –

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed;

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

§ 1332(4)(A).

*i.*

First, Plaintiffs must show that greater than 2/3 of that proposed class were citizens of Louisiana when the Complaint was filed. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). Plaintiffs' Complaint includes two proposed class definitions,[4]

---

[4] First, Paragraph 1 reads:
Plaintiffs and Class Members are individuals who have suffered economic losses, property losses, and non-economic losses or injuries as a result of Defendants actions or omissions, all as more fully set forth hereinafter, within six basic categories: Physical Personal Injury Tort Claims; Nonphysical Tort Claims; Property Related Claims; Financial Claims; Mental Distress Claims; and Statutory Claims.

4

and the parties initially dispute which controls. Defendants argue for the first and broader definition, which includes any individual who suffered injuries as a result of Defendants' actions, irrespective of whether they ever purchased a MIR Foundation home. Plaintiffs purport to use the second, which includes current, original and subsequent purchasers of MIR Foundation homes.

The Fifth Circuit has counseled that, when faced with conflicting class definitions on a motion to remand, "[i]f either paragraph is to be given greater weight, it ought to be the paragraph that contains what the plaintiff has declared is the class definition." *Arbuckle*, 810 F.3d at 340. Here, the narrow definition appears in the paragraph that formally identifies the class. Moreover, the paragraph found directly below the broad definition states that "Plaintiffs and Class Members are individuals *who purchased Make It Right Homes*[.]" R. Doc. 1-2 at 2.

Plaintiffs must show that 2/3 of the proposed class of current, former, and subsequent purchasers of MIR Foundation homes were citizens of Louisiana when the Complaint was filed. An individual is a citizen of the state of her domicile. "Evidence of a person's residence is prima facie proof of his domicile" and, once established, a person's state of domicile is presumed to continue unless rebutted by sufficient evidence of change. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

"The district court may make a reasonable assumption of CAFA's citizenship requirements from evidence that indicates the probable citizenship of the proposed class." *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291 (5th Cir. 2011) (internal quotations omitted). For example, in

---

While Paragraph 4 reads:

> Plaintiffs seek to represent the following class of individuals: *All persons who have purchased a home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Louisiana from August 15, 2007 to the present, and/or who subsequently purchased a home from an original purchaser of a Make It Right home from any of the Make It Right defendants in the Lower Ninth Ward, New Orleans, Louisiana from August 15, 2007 to the present.*

*Caruso v. Allstate Ins. Co.*, the plaintiffs sought to represent a class of Louisiana homeowners with homeowner's policies from one of the six insurance company defendants. 469 F. Supp. 2d 364, 367 (E.D. La. 2007). Because "owning a home is an indicium of domicile," the court held that "the plaintiffs' assertion that they represent[ed] a class of individuals covered by homeowner's policies" for Louisiana homes "create[d] a reliable presumption" that the class was comprised of Louisiana citizens. *Id.*; *see also Bennett v. Bd. Of Comm'rs for East Jefferson Levee District*, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (Holding that it was "reasonable to infer" that 2/3 requirement was met for proposed class of "residents, domicilliaries, business entities, property owners, and other persons and entities residing or present [in Jefferson Parish, Louisiana] on August 29, 2005"); *Coco v. Heck Indus., Inc.*, 2014 WL 1029994, at *1 (W.D. La. Mar. 17, 2014) (more probable than not that 2/3 of proposed class of individuals "who are residents, domiciliaries, and/or located in Avoyelles Parish, State of Louisiana" and suffered damages from operations at a concrete facility within a two-mile radius were Louisiana citizens); *Joseph v. Unitrin, Inc.*, 2008 WL 3822938, at *6 (E.D. Tex. Aug. 12, 2008) ("Because the putative class members are all alleged to be Texas residents, logic dictates that their homes, and by extension, their domicile, remain in Texas."); *Sherman v. Mantle Oil & Gas, LLC*, 2011 U.S. Dist. LEXIS 5280, at *7 (Although citizenship was not disputed, the court noted that "the Court is permitted to use 'common sense' in determining that a well blowout in Assumption Parish, Louisiana, likely affected a class consisting of greater than two-thirds Louisiana citizens.").

By Plaintiffs' calculation, there are a total of 113 original and subsequent purchasers of the Lower 9th Ward MIR Foundation homes.[5] Plaintiffs offer Accessor's Office records showing that

---

[5] Eight MIR Foundation homes were sold by the original purchaser to a subsequent purchaser as of the date the Complaint was filed. One was sold back to the MIR Foundation and is excluded from Plaintiffs' proposed class. *See* R. Doc. 1-1 at 10.

91 MIR Foundation homeowners claimed homestead exemptions for the year 2018 as proof of the citizenship of the proposed class. The Court, guided by common sense and evidence of 91 homestead exemptions for the year 2018, concludes that greater than 2/3 of the proposed class of current and former Lower 9th Ward homeowners were citizens of Louisiana when the Complaint was filed.

*ii.*

Next, the local controversy exception requires a Louisiana defendant (1) from whom significant relief is sought and (2) whose alleged conduct forms a significant basis for the claims asserted. 28 U.S.C. § 1332(d)(4)(A)(i)(II). Courts have found that a defendant is not "significant" when "only a small portion of the class members have claims against that particular defendant," or when the relief sought from that defendant is "just small change in comparison to what the class is seeking from other co-defendants." *Phillips v. Severn Trent Envtl. Servs., Inc.*, 2007 WL 2757131, at *3 (E.D. La. Sept. 19, 2007).

Plaintiffs contend that the MIR Foundation entity-defendants satisfy this requirement because, though they are incorporated in Delaware, their principal place of business is in Louisiana. They cite the MIR Foundation's tax filings, its website listing its New Orleans address as its "main office," and a lawsuit that the MIR Foundation entities recently filed in Louisiana state court as evidence that its principal place of business is in Louisiana. Defendants respond that this evidence sheds no light on the MIR Foundation's true nerve center as of the date the Complaint was filed, because the tax filings are three years old, the registered New Orleans office appears to no longer be staffed, and the entities have virtually no day-to-day operations in Louisiana.

The MIR Foundation sued its executive architect in the Civil District Court for the Parish of Orleans on September 18, 2018 – only eleven days after Plaintiffs' filed their Complaint. In its

state-court Petition, each of the MIR Foundation entities identifies its principal place of business as 912 Magazine Street, New Orleans, Louisiana. Furthermore, a report filed with the Louisiana Secretary of State on December 13, 2018 identifies the MIR Foundation's "principal business office wherever located" as its Magazine Street office. R. Doc. 54-1.[6]

### III.  CONCLUSION

The Court recognizes that the "local controversy" exception is a narrow one. However, Plaintiffs have met their burden of showing that (1) greater than 2/3 of the proposed class were citizens of Louisiana when the Complaint was filed, and (2) the presence of at least one significant Louisiana defendant. Because this is "a controversy that uniquely affects a particular locality to the exclusion of all others," S. Rep. No. 109-14, 39, 2005,

**IT IS ORDERED** that Plaintiff's Motion to Remand, R. Doc. 15, is **GRANTED**.

New Orleans, Louisiana, this 15th day of May, 2019.

**ELDON E. FALLON**
United States District Judge

---

[6] In any event, Defendants James Mazzuto and Craig Turner are Louisiana domiciliaries who qualify as significant defendants. Mazzuto is the Chief Operating Officer and board member of the MIR Foundation, and Turner was a member of the MIR Foundation Board of Directorsand Director of Construction from 2011-2014. Mazzuto's alleged conduct, in particular, forms a significant basis of the claims that Plaintiffs assert. They allege that he "held a position of authority and control over the management of the Foundation, its funds, assets, and operations;" that he "made promises to investigate damages and/or defects to the Make It Right Homes and to report to the homeowners the findings of the investigation and to repair the damages;" and that the homeowners "detrimentally relied upon the false promises that they would receive the engineering report for their respective home." Plaintiffs further allege that Mazzuto is presently engaged in an "attempt to fraudulently mislead homeowners into signing non-disclosure agreements and binding arbitration agreements," a scheme that he concocted when the MIR Foundation's "failures and the deteriorating condition of the homes" gained public attention.